COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Bumgardner and Clements
Argued at Salem, Virginia


STEVEN R. HOEBELHEINRICH

                                                    OPINION BY
v.        Record No. 2359-03-3          JUDGE ROSEMARIE ANNUNZIATA
                                                    AUGUST 3, 2004
NANCY A. HOEBELHEINRICH


            FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                        Michael L. Moore, Judge

        James R. Henderson IV (Henderson & Forster, on briefs), for
        appellant.

        Robert M. Galumbeck (Galumbeck, Necessary, Dennis & Kegley,
        on brief), for appellee.


        Steven R. Hoebelheinrich (husband) appeals from a final decree of divorce that awarded

Nancy A. Hoebelheinrich (wife) $327,388 as a one-half share of husband's medical practice,

$100,163 in spousal support arrearages, $4,800 per month in spousal support, and certain other

sums from the marital estate. Husband contends the trial court erred: 1) in valuing his medical

practice; 2) in awarding wife one-half the value of that practice; 3) in awarding wife $4,800 per

month in spousal support; 4) in failing to consider the tax consequences of the spousal support

awards; 5) in determining that the value of certain household goods was not established and in

awarding wife nearly all those goods; and 6) in awarding wife one-half the value of husband's

retirement accounts. The relevant facts are discussed as each issue is addressed. For the reasons

that follow, we affirm.

I. Value of Husband's Medical Practice

Husband contends that the trial court erred as a matter of law in adopting the expert opinion of Dr. Ward Zimmerman that the medical practice had a value of $654,776 for purposes of equitable distribution. Husband also contends that the trial court erred as a matter of law in rejecting the valuation of the medical practice offered by husband's expert, Janet Shrader. We find, however, that husband has failed to establish that the trial court's adoption of Zimmerman's opinion, and its rejection of Shrader's opinion, violated established law.

We view the evidence on this issue, and all inferences that may be reasonably drawn from the evidence, in a light most favorable to wife as the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). So viewed, the record establishes the trial court instructed the parties to agree on an expert to evaluate husband's solo medical practice. The trial court stated that, if the parties could not reach an agreement, each party should offer the names of two qualified experts, from whose names the trial court would choose one to submit a valuation. Counsel for wife agreed to this procedure, and counsel for husband stated that the procedure was "[f]air enough." Wife subsequently submitted the names of two experts, one of whom was Zimmerman. Husband failed to submit any names. By decree dated July 9, 2001, the trial court found that "Dr. Ward Brian Zimmerman is qualified to evaluate [the medical] practice" and directed Zimmerman to "investigate and evaluate the medical practice . . . and make his report unto the court." Husband did not object to the decree.

On February 22, 2002, Zimmerman submitted his report to the trial court. The report revealed that Zimmerman computed four alternative values for the medical practice. He used two distinct base methods—the "capitalization of earnings" method and the "discounted future earnings" method—to conduct his analysis. Within the calculations performed using each base method, he considered two "scenarios," differing only in the treatment of husband's salary. In

the first scenario, he treated husband's salary as a "general and administrative expense," which had the effect of decreasing the net income of the practice. In the second scenario, he excluded husband's salary from his calculations altogether. Treating husband's salary as a business expense under the capitalization of earnings method yielded a value of $654,776 for husband's medical practice. Excluding husband's salary under the same method yielded a value of $1,824,434. The discounted future earnings method yielded a value of $743,608 if husband's salary was treated as a business expense and a value of $1,994,921 if husband's salary was excluded from the calculations.

By letter dated May 22, 2002, husband notified wife that he "disagree[d] strongly with the valuation" conducted by Zimmerman and intended to hire Janet Shrader, a certified public accountant, to testify as to the value of husband's medical practice. Shrader submitted a report that valued husband's medical practice at $140,000. She utilized two base methods—the capitalization of earnings method and the "excess earnings" method. The capitalization of earnings method yielded a value of $515,000, and the excess earnings method yielded a value of $460,000. Shrader further determined that the total value of the practice included an "intangible value" of $300,000 which reflected the goodwill of the practice. She attributed eighty-five percent of the intangible value to husband's professional or personal goodwill and fifteen percent to the goodwill of the enterprise or business entity. She therefore subtracted eighty-five percent of the intangible value ($255,000) from the value calculated under each base method, yielding an adjusted value of $260,000 under the capitalization of earnings method and $205,000 under the excess earnings method. "Weighting [both] the [base] methods equally," she arrived at a value of $220,000. She then applied a thirty-five percent discount for lack of marketability, a percentage derived from statistical data indicating that securities which are restricted from sale

for at least two years were selling at a thirty to thirty-five percent discount. Applying the discount for marketability yielded a final value of $140,000 for husband's medical practice.

In addition to her report, Shrader gave testimony through deposition. During her deposition, she criticized Zimmerman's report. She stated that Zimmerman defined the value of husband's medical practice in terms of "fair value," a term she believed was "really closer to 'fair market value.'" She opined that fair market value was "not appropriate to use in this situation" because "we're not trying to sell this practice or determine what a hypothetical buyer would pay for this business." She also criticized the figure Zimmerman used for the capitalization rate. She finally stated that Zimmerman should not have omitted husband's salary from some of his calculations because her "studies show[ed] that the compensation [husband] is receiving . . . is reasonable."

After discussing the evidence on valuation presented by Zimmerman and Shrader in an opinion letter dated April 24, 2003, the trial court adopted Zimmerman's lowest figure, $654,776, as the value of husband's medical practice. The trial court stated, in relevant part:

> The Court finds that the appropriate method for valuing this medical practice is the Capitalization of Earnings Method, including the deduction for officer's salary. The salary deducted is reasonable and [husband] is an essential officer of the corporation. In fact, without him the business has only the value of its assets.
> Therefore, the Court accepts and adopts the value determined by Dr. Zimmerman of $654,776 . . . .
> The "lack of marketability discount" applied by the [h]usband's expert [Shrader] is not appropriate because there is no evidence that a sale of the practice is necessary or foreseeable. (See Howell v. Howell, 31 Va. App. 332, [523 S.E.2d 514] (2000)[)].

Husband contends on appeal that the trial court erred as a matter of law by assigning value to the medical practice beyond its fixed, tangible assets because all other value can, and must, be attributed to his personal goodwill. He cites Howell in support of his position that personal or professional goodwill is separate property not subject to equitable distribution upon

- 4 -

divorce. Although we agree that personal goodwill is separate property, we find that husband has failed to show that the trial court's reliance on Zimmerman's opinion violated this principle of law because no evidence establishes that the figure adopted failed to take account of husband's personal goodwill.

In Virginia, the courts look to the intrinsic value of the property to the parties to measure value for equitable distribution purposes. Owens v. Owens, 41 Va. App. 844, 854, 589 S.E.2d 488, 493 (2003). "Intrinsic value is a very subjective concept that looks to the worth of the property to the parties and their marriage." Howell, 31 Va. App. at 339, 523 S.E.2d at 517. As a consequence of the subjective nature of intrinsic value, "the particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." Id. at 339, 523 S.E.2d at 518.

The intrinsic value of an asset may include goodwill, which is defined as the "increased value of the business, over and above the value of its assets, that result from the expectation of continued public patronage." Russell v. Russell, 11 Va. App. 411, 415, 399 S.E.2d 166, 168 (1990) (internal quotations omitted). Although we have said that, as a matter of law, goodwill attributable to personal characteristics is considered separate property and goodwill attributable to the business entity is considered marital property, see Howell, 31 Va. App. at 344, 523 S.E.2d at 520; Russell, 11 Va. App. at 415-16, 399 S.E.2d at 168, we will not disturb a "'trial court's valuation of goodwill . . . if it appears that the court made a reasonable approximation of the goodwill value, if any, of the professional practice based on competent evidence and the use of a sound method supported by that evidence.'" Howell, 31 Va. App. at 339, 523 S.E.2d at 518 (quoting Russell, 11 Va. App. at 417, 399 S.E.2d at 169). "If conflicting, competent evidence is presented, that [evidence] found more credible will determine whether goodwill exists and its value if it does exist. The existence [of goodwill] is not fixed as a matter of law, nor is the

method of [its] valuation; both are functions of the fact-finding process." Id. at 340, 523 S.E.2d at 518.

Here, the expert appointed by the trial court, Zimmerman, and husband's expert, Shrader, presented conflicting evidence regarding the value of husband's medical practice. The trial court rejected husband's expert and adopted Zimmerman's opinion. The evidence fails to show, as husband contends on appeal, that the trial court failed to consider husband's personal goodwill in adopting Zimmerman's valuation. Indeed, the trial court's opinion letter indicates the contrary; recognizing that "without [husband] the business has only the value of its assets," the trial court accepted Zimmerman's valuation figure which, *inter alia*, excluded husband's salary. Husband presented no evidence to the trial court which we can use as a basis to conclude, as a matter of law, that Zimmerman's method of valuation failed to exclude the value of the medical practice attributable to his personal goodwill. Although Shrader criticized Zimmerman's valuation on several grounds, she did not testify that his method of valuation, which excluded husband's salary, failed to deduct husband's personal goodwill from the value of the medical practice. Thus, in light of the absence of any evidence establishing that Zimmerman's methodology failed to account for husband's personal goodwill in accordance with Virginia law, we conclude that the trial court relied "'on competent evidence and . . . a sound method supported by that evidence.'"[1] Howell, 31 Va. App. at 339, 523 S.E.2d at 518 (quoting Russell, 11 Va. App. at 417, 399 S.E.2d at 169); see also Russell, 11 Va. App. at 417, 399 S.E.2d at 169 (holding that "that no single method" for the valuation of goodwill "is to be preferred as a matter of law"). Therefore, considering the record in the instant case, "[w]e cannot say that . . . [Zimmerman's]

---

[1] We do not suggest that Zimmerman's valuation method correctly accounts for personal goodwill. We hold only that the present record does not allow us to conclude that Zimmerman's valuation method was insufficient as a matter of law.

opinion was unworthy of belief as a matter of law." Howell, 31 Va. App. at 343, 523 S.E.2d at 520.

Husband further contends that the "trial court committed a clear error of law" by rejecting Shrader's valuation opinion on the ground that she applied a discount for lack of marketability. The trial court stated only that the "'lack of marketability discount' applied by the husband's expert is not appropriate because there is no evidence that a sale of the practice is necessary or foreseeable." There is no indication, however, that the trial court rejected Shrader's opinion on this ground alone.[2] The trial court was presented with a classic "battle of the experts" and was entitled to judge "the weight and credibility to be given their testimony." Bd. of Supervisors v. HCA Health Servs. of Virginia, Inc., 260 Va. 317, 332, 535 S.E.2d 163, 171 (2000). The trial court gave more weight to Zimmerman's opinion, and nothing in the record shows that the trial court's decision was plainly wrong.

## II. Award of Half the Medical Practice to Wife

Husband contends the trial court erred in awarding wife half the value of the medical practice. He contends the figure was arrived at arbitrarily, without regard to the statutory factors. See Code § 20-107.3(E). Although a fifty-fifty distribution is not required, see Shackelford v. Shackelford, 39 Va. App. 201, 211, 571 S.E.2d 917, 922 (2002), nothing in the statute or case law suggests that such a distribution is inappropriate or disfavored. Furthermore, even though the trial court did not elaborate upon its reasoning, the evidence, viewed in a light most favorable to wife, supports the trial court's award. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992).

---

[2] In any event, the trial court was entitled to reject Shrader's opinion on this ground because such a discount "presupposes a probable sale. . . . If a sale is improbable, the discount need not be applied." Owens, 41 Va. App. at 856, 589 S.E.2d at 494-95. Here, as noted by the trial court, "there is no evidence that a sale of the practice is necessary or foreseeable." See Howell, 31 Va. App. at 345, 523 S.E.2d at 521.

The record reveals that husband and wife were married in 1977 and separated twenty-two years later in 1999. After the parties were married, husband attended medical school while wife worked. When husband graduated from medical school, husband and wife agreed that wife would stay home to raise their children and care for the home. They had four children, and wife raised them well, involving them in numerous activities. "If there was something available, [i.e. extracurricular activities]," wife "had [the children] in it." Wife was also accustomed to a comfortable lifestyle. She belonged to country clubs, purchased new vehicles on a regular basis, and never wanted "for anything." In light of this evidence, we find that the "award is adequately supported by the evidence relevant to those factors" found in Code § 20-107.3(E). Alphin, 15 Va. App. at 405, 424 S.E.2d at 578. "Accordingly, the husband's challenge to the trial court's ruling on this issue is without merit." Id.

### III. Trial Court's Award of Spousal Support to Wife

Husband contends that the trial court erred in awarding wife $4,800 per month in spousal support. Husband complains primarily that the trial court "double-dipped" into a single revenue stream by awarding wife *both* half the value of his medical practice and spousal support which must be paid from the income he derives from the medical practice. However, husband cites no relevant authority in support of his position.[3] Therefore, husband's argument does not merit

---

[3] Husband's citation to Howell for the argument he advances is misplaced. Howell stated that courts should not confuse personal future earning capacity with practice, or enterprise, goodwill "in order to avoid double counting." 31 Va. App. at 344, 523 S.E.2d at 520. Thus, the issue of "double counting" appeared in Howell in the context of equitable distribution and valuation of goodwill, factual and legal circumstances far removed from the spousal support award at issue here. By contrast, we have held that it is proper for the trial court to consider all assets when fashioning a spousal support award. See Moreno v. Moreno, 24 Va. App. 190, 204, 480 S.E.2d 792, 799 (1997) ("'An award of alimony can be based not only upon the payor's income but also upon his property. . . . All types of property . . . should be a permissible source for future alimony payments.'" (quoting Brett R. Turner, Equitable Distribution of Property § 6.11 p. 355 (2d ed. 1994))).

appellate consideration, <u>Buchanan v. Buchanan</u>, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) (holding that arguments "unsupported by . . . authority . . . do not merit appellate consideration"), and we decline to address it further.

## IV. Trial Court's Consideration of Tax Impact Incurred by Husband

### A. The Prospective Spousal Support Award

Husband contends that the trial court failed to consider the tax impact arising from his past payments to wife pursuant to a settlement agreement that provided wife would receive the payments free of taxes.[4] Specifically, husband complains the trial court gave no consideration to the deleterious tax consequences of the settlement agreement when it determined the amount of spousal support he must pay prospectively to the wife.

Code § 20-107.1(E) provides that a trial court, "[i]n determining the nature, amount and duration of [a spousal] support award pursuant to this section, . . . shall consider the following: . . . (13) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties." Nothing in the statute suggests that the trial court must consider the tax consequences of a past contractual obligation when determining the amount of future spousal support. In fact, husband cites no authority in support of his argument, and we have found none. Accordingly, we find no error.

### B. The Award of Spousal Support Arrearages

Husband further contends the trial court erred in failing to consider the tax impact to husband of the award of spousal support arrearages. We disagree.

The final decree of divorce determined that husband owed spousal support arrearages in the amount of $100,163 for September 1, 2001 through August 21, 2003. During that time

---

[4] Under such an agreement, husband could not deduct the amount he paid in spousal support from his income for federal tax purposes.

period, husband was under an obligation pursuant to a *pendente lite* order to pay spousal support in accordance with the terms of the parties' settlement agreement.[5] Because the *pendente lite* order required husband to pay spousal support in accordance with the terms of the settlement agreement, husband argued that he suffered the same deleterious tax consequences discussed above, i.e. he was unable to deduct the amount of spousal support paid from his income for federal tax purposes.

Husband cites no authority for the proposition that a trial court must consider the tax impact of an arrearage award. In fact, it is "well-established . . . that court-ordered [spousal] support becomes vested when it accrues and [that] the courts are without authority to make any change with regard to arrearages." Smith v. Smith, 4 Va. App. 148, 152, 354 S.E.2d 816, 818-19 (1987). We accordingly reject husband's argument that the trial court erred as a matter of law by failing to consider the tax consequences of the spousal support arrearage award.

V. Household Goods

Husband contends the trial court erred in rejecting his unrebutted testimony that the value of the parties' household goods was $83,000. He contends further that trial court erred in awarding to each party those items currently in his or her possession. We find husband's contentions to be without merit.

Husband introduced at trial a typewritten list of the household goods and their value. The list is divided into two columns: the first column lists the item according to its room location, and the second column lists each item's value. No other information—such as copies of receipts, the

---

[5] The trial court issued an order on September 11, 2003, *nunc pro tunc* to February 28, 2001, finding the parties' settlement agreement to be "null and void" because it was executed while the parties were cohabiting. The order further directed husband to pay spousal support pursuant to the settlement agreement "until further order of this Court."

dates of purchase, or the amount the items had depreciated—is provided. Husband testified that he "listed what I felt the replacement value was for the things, but that's the best I could do." The total value of all items listed came to approximately $83,000. Wife lodged no objection to husband's testimony or to the admission of his list into evidence.

In his letter opinion, the trial judge stated that

> [t]he only evidence as to the value of the furniture and household goods comes from the husband who testified that the "replacement value" was over $83,000. The Court finds that replacement value is not an appropriate means to value used furniture, appliances, tools, and other household goods. No other evidence as to value has been presented.

A trial court has broad discretion to determine the value of assets. Howell, 31 Va. App. at 341, 523 S.E.2d at 519. "The trial court's valuation cannot be based on mere guesswork. The burden is on the parties to provide the trial court sufficient evidence from which it can value their property." Bosserman v. Bosserman, 9 Va. App. 1, 5, 384 S.E.2d 104, 107 (1989) (quotations and citations omitted). Further, the trial court determines the weight and credibility to afford the evidence presented to it. Wheeler v. Wheeler, 42 Va. App. 282, 295, 591 S.E.2d 698, 705 (2004). In sum, "the value of property is an issue of fact, not law." Howell, 31 Va. App. at 340, 523 S.E.2d at 518.

Here, the trial court determined that husband failed to carry his burden of establishing the value of the household goods. See Bosserman, 9 Va. App. at 5, 384 S.E.2d at 107. Although husband's evidence was unrebutted by wife, he testified only to the replacement cost of the household items. Husband cites no authority that holds that the trial court cannot, in its discretion, reject evidence of replacement value. In fact, although "[t]he cost to replace an asset under present conditions is some evidence of an asset's present fair market value[,] . . . [r]eplacement cost is not . . . the legally controlling definition of value." Brett R. Turner, Equitable Distribution of Property § 7.04, at 504, 508 (2d ed. 1994). We therefore find that the

- 11 -

trial court's determination that the value of the household goods was not established is supported by the law and credible evidence and is not plainly wrong.

We further find that husband's contention that the trial court erred in awarding the household items to the party who possessed them is procedurally defaulted. He cites no authority in support of his position, and he does not develop the argument on brief. Accordingly, we will not address the merits of his argument. See Buchanan, 14 Va. App. at 56, 415 S.E.2d at 239.

VI. Husband's Retirement Accounts

Husband finally argues that the trial court erred in awarding wife one-half the value of his retirement assets. Because a one-half share of the retirement assets is the upper limit, husband argues the trial court abused its discretion. We disagree.

Code § 20-107.3(G) provides that the trial court may award up to one-half the value of a spouse's retirement assets to the other spouse. The statute directs the trial court to consider the equitable distribution factors found in Code § 20-107.3(E) before dividing the marital retirement assets. "'In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one. Accordingly, we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" Shackelford, 39 Va. App. at 210, 571 S.E.2d at 921 (quoting Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987)). "We will not disturb the trial court's equitable distribution award merely because it is unequal in value between the parties, where the record reflects that the trial court has considered each of the factors set out in Code § 20-107.3(E), and where the evidence supports the trial court's conclusions." Budnick v. Budnick, 42 Va. App. 823, 838, 595 S.E.2d 50, 57 (2004).

-12-

Viewed in a light most favorable to the wife, we find that the trial court considered the relevant equitable distribution factors and that credible evidence supports the trial court's award of one-half the value of husband's retirement assets to wife.  <u>See</u> *supra* Part II.  Accordingly, we will not disturb that award on appeal.

VII.  Conclusion

For the foregoing reasons, we affirm.

<u>Affirmed</u>.