COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, McClanahan and Senior Judge Willis
Argued at Salem, Virginia


JEFF ROUSE AND TAMMY ROUSE

v.      Record No. 0944-04-3

RUSSELL COUNTY DEPARTMENT OF SOCIAL SERVICES,
 DEBRA GIBSON, THELMA CASTLE AND JAMES CASTLE


MATTHEW CODY, ESQUIRE
 GUARDIAN *AD LITEM* FOR INFANT CHILD
                                                        MEMORANDUM OPINION[*] BY
v.      Record No. 1057-04-3                    JUDGE RUDOLPH BUMGARDNER, III
                                                           FEBRUARY 15, 2005
JEFF ROUSE, TAMMY ROUSE,
 RUSSELL COUNTY DEPARTMENT OF SOCIAL SERVICES,
 DEBRA GIBSON, JAMES CASTLE AND THELMA CASTLE


DEBRA GIBSON

v.      Record No. 1074-04-3

RUSSELL COUNTY DEPARTMENT OF SOCIAL SERVICES,
 JAMES CASTLE, THELMA CASTLE, JEFF ROUSE AND
 TAMMY ROUSE


FROM THE CIRCUIT COURT OF RUSSELL COUNTY
Keary R. Williams, Judge

Patricia E. Smith (Bradford & Smith, P.C., on briefs), for Jeff Rouse
and Tammy Rouse.

A. Benton Chafin, Jr. (Chafin Law Firm, P.C., on briefs), for Russell
County Department of Social Services.

Martin Wegbreit (Southwest Virginia Legal Aid Society, on briefs),
for Debra Gibson.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Susan D. Oglebay for Thelma Castle and James Castle.

Matthew J. Cody, Jr., Guardian *ad litem* for the infant child.

The trial court heard petitions for termination of parental rights and two competing petitions for custody of an infant together. It terminated the mother's parental rights to her 2 ½-year-old child but delayed making a final custody decision because it found that the department of social services had not adequately investigated placement of the child with his relatives.

The infant was born June 24, 2001 with a nearly complete blockage of his gastro-intestinal tract. Surgery corrected that condition, but his mother was unable to provide the meticulous care that the surgery and his condition demanded. She was mentally retarded with an I.Q. of 68. Upon the child's discharge from the hospital, the department removed him from the mother and placed the eleven-week-old infant with therapeutic foster parents with whom he remains. The juvenile and domestic relations district court approved the emergency removal finding "medical neglect, and . . . reasonable efforts have been made to prevent removal."

The department's initial goal was to return the child to the mother, and that remained the goal until September 6, 2002 when it filed a permanency plan changing the goal to adoption. It filed a petition to terminate the parental rights a month later, and the juvenile and domestic relations district court approved the goal of adoption at the end of October. The district court never heard the termination or custody petitions because all concerned agreed to dispense with a hearing there and appeal immediately to the circuit court. The district court entered consent judgments that terminated the mother's parental rights, continued legal custody of the child with the department and physical custody with the foster parents, and denied custody to the mother's aunt and uncle.

The circuit court held an *ore tenus* hearing October 31, 2003, issued letter opinions on December 19, 2003 and March 22, 2004, and entered its final order April 7, 2004. It terminated the mother's parental rights but found that the department of social services failed to investigate placement with a relative as required by Code § 16.1-283. The trial court found the department "failed to adequately seek out and discover collateral relatives who were interested in custody of the child." It concluded that "preferred placement of this child would lie with the child's natural relatives, James and Thelma Castle."

The trial court postponed a final custody determination for twelve months. During that period, it continued legal custody with the department and continued physical custody with the foster parents, but it increased visitation for the interested relatives and ordered expert evaluation of the relationship of the infant with the foster parents and the aunt and uncle. The decisions of the trial court generated three separate appeals, which we have consolidated.

The foster parents, Jeff and Tammy Rouse, contend the trial court erred in hearing the termination and custody petitions together; in postponing the final custody decision; in finding the department had not adequately investigated a family placement; in not mitigating harm to the child; and in directing the parties to cooperate with an expert selected by the court to evaluate relationships with the child. The child's guardian *ad litem*, Matthew J. Cody, filed a separate appeal though it presents nearly identical questions and arguments.

The mother and her aunt and uncle, Thelma and James Castle, contend the trial court correctly found the department inadequately considered placement with the family. While the mother does not seek to have the child returned to her, she and her relatives maintain the trial court could not terminate parental rights before the department met the requirement of Code § 16.1-283 that it adequately consider placement with relatives.

The department of social services contends it adequately investigated placement with relatives. It maintains the trial court erred in not granting custody to the foster parents after terminating the mother's parental rights because it was in the child's best interest. The department argues the petition by the relatives for custody was not timely because the district court previously adjudicated adequacy of the investigation when it approved the permanency plan. The department argues alternatively that any failure to investigate relative placement was harmless because the trial court acquired the necessary information at trial.

One fundamental issue constitutes the keystone upon which all other issues in this case depend: did the department adequately investigate placement with family members. The trial court found it did not. If the evidence permitted the trial court to make that finding, it is binding on appeal, and all the other issues resolve themselves in logical sequence according to established precedent.

In reviewing the adequacy of the department's investigation, we view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). The department made two inquiries about relative placement. The first occurred the day before the child was discharged from the hospital. A caseworker asked the mother if anyone could help her care for the child. The mother indicated there was no one to help, so the department removed the child and placed him in the foster home. The department had dealt with the mother previously and knew her limited mental capacity.[1] It also knew the

---

[1] The department became involved with the mother before the child was born when it received a complaint of inadequate supervision and inadequate hygiene for her three other children.

mother's parents and a sister who resided in the area.[2] It considered those relatives unsuitable for placement because of prior, founded complaints.

Ten months after the removal, the case manager asked the mother whether any relatives were willing to take custody of the child. The mother suggested her aunt and uncle, who lived in South Carolina. They contacted the department, expressed interest in the child, and filed for custody September 27, 2002.

None of the three foster care plans disclose any efforts to place the child with relatives. The first plan contained no discussion of the department's efforts. The second and third plans contained a specific provision for describing the efforts to place with relatives, but neither plan addressed that inquiry. Instead, they simply stated that the child needed placement because he was unable to care for himself.

The mother had identified the aunt and uncle for the department on July 17, 2002, yet the permanency plan, dated September 5, 2002, contained this description: "The Department has requested that Ms. Gibson have relative to contact the Department if they would be interested in obtaining custody of the child. To this date, the Department has yet to hear from any of Ms. Gibson's relatives. To our knowledge there are no appropriate relatives." The relatives formally petitioned for custody September 27, but the department petitioned to terminate the mother's parental rights one week later, October 6.

The trial court found the department had not proven that it adequately sought out and discovered family members who might be interested in custody of the child. The evidence supports that factual finding which is a determination that cannot be reversed on appeal unless it is plainly wrong or without evidence to support it. Farley v. Farley, 9 Va. App. 326, 328, 387

---

[2] The department knew the mother's parents, Wayne and Nina Castle, and her sister, Pam, who resided locally. It was not aware of a sister in West Virginia or the aunt and uncle in South Carolina.

S.E.2d 794, 795 (1990).  To the contrary, the evidence indicates that once the department determined the foster care placement was in the best interests of the child it declined to consider the Castles as an appropriate placement.

We conclude that the evidence supported the finding that the department did not adequately investigate placement with relatives, and we affirm that decision.  The requirements of Code § 16.1-283 establish the mandatory steps necessary to reach a proper determination of what is in the best interests of a child.  Those detailed procedures are "designed to protect the rights of the parents and their child" and must be strictly followed before a court may sever the natural and legal bond between them.  Rader v. Montgomery County Dep't of Soc. Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235-36 (1988).

Logan held the department had a duty to investigate placement with relatives before the court determined custody.

> We believe that before the court grants custody of a child, under the provisions of Code § 16.1-283(A), the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.

13 Va. App. at 131, 409 S.E.2d at 464.

Sauer v. Franklin County Dep't of Soc. Servs., 18 Va. App. 769, 446 S.E.2d 640 (1994), further interpreted that duty and held the department must investigate relative placement before the court terminated ties between the parent and child.  "Before termination of parental rights by the court, the agency seeking termination has an affirmative duty to investigate all reasonable options for placement with immediate relatives."  Id. at 771, 446 S.E.2d at 641.  While the department had no duty to investigate every remote relative, it did have the duty to investigate Sauer's mother with whom he lived.  Id.  The duty to investigate is a rule of reason dependent upon the particular facts and circumstances of each individual case.

Hawthorne v. Smyth County Dep't of Soc. Servs., 33 Va. App. 130, 137, 531 S.E.2d 639, 643 (2000), emphasized that the investigation of placing the child with relatives must be made prior to the issuance of an order terminating parental rights. "DSS had a duty to investigate placement of B.H. with relatives before the court could terminate appellants' parental rights." Id.

A failure to investigate may be harmless if the trial court heard sufficient evidence for it to decide that placement with relatives was not appropriate. Sauer reversed the termination of the father's parental rights because the department "failed to exhaust its potential viable alternatives for placement." 18 Va. App. at 771, 446 S.E.2d at 641. However, Logan upheld termination of the mother's rights despite a similar failure because the trial court heard sufficient evidence that the grandmother's home was not appropriate. In Hawthorne, the department failed to contact an aunt regarding placement. The aunt testified at the hearing and provided sufficient evidence for the trial court to decide her home was not appropriate. See also Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217-18, 597 S.E.2d 214, 220 (2004) (the department considered placing child with grandmother and court considered such evidence before terminating father's rights).

In Logan, Hawthorne, and Brown, the trial court heard sufficient evidence to determine that placement in the relatives' home was not suitable despite the department's failure to investigate. The failure was harmless error on appellate review because the trial court received sufficient evidence to make the factual findings mandated by Code § 16.1-283(A1)[3] for

---

[3] Code § 16.1-283(A1) provides:

> Any order transferring custody of the child to a relative or other interested individual pursuant to subsection A of this section shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the

transferring custody. If the court acquires the facts despite the failure of a department to investigate, reversing the termination and remanding for an investigation would constitute "'a vain and useless undertaking.'" Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644 (quoting Virginia Passenger & Power Co. v. Fisher, 104 Va. 121, 129, 51 S.E. 198, 201 (1905)).

In this case, the department's failure was not cured at trial. The record does not permit a conclusion that the trial court had sufficient evidence to exclude the Castles as appropriate custodians. Indeed, the evidence suggests the opposite. The home study recommended them. James Castle was retired from the U.S. Army after 24 years of service. He worked full-time as a shop manager of a trucking company and was in good health. Thelma Castle worked as a homemaker and was also in good health. The Castles were financially stable and owned their home. They raised four grown children and indicated they were interested in caring for the child. The only factor that might exclude them as appropriate custodians was their ages of 63 and 57.

The trial court made no finding that the relatives were inappropriate custodians. Its decision to postpone a final custody decision suggests the trial court concluded they might prove to be proper custodians. The decision granting increased visitation would permit the relatives an opportunity to develop their relationship with the child while maintaining the status quo to minimize harm to him. The trial court directed measures to develop the very information needed to resolve whether to place the child with his relatives. The action made clear the trial court found the evidence at trial insufficient to permit it to exclude placement with the relatives.

---

child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state. The court's order transferring custody to a relative or other interested individual should further provide, as appropriate, for any terms and conditions which would promote the child's interest and welfare.

"The termination of parental rights is a grave, drastic, and irreversible action" because it severs the tie between parent and child and makes them legal strangers. Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986). "[O]ther remedies should be sought when available." Sauer, 18 Va. App. at 771, 446 S.E.2d at 641.

The finding that the investigation was inadequate dictated that termination of the mother's parental rights was premature. Placement with relatives is preferred. If the mother's rights were terminated, she and the child become legal strangers, though her aunt and uncle were still related to both the child and the parent. Until the statutory preference for placement within the family had been fully reviewed by the trial court and found to be inappropriate, termination was not in order. We reverse that portion of the trial court's decree that terminates the parental rights of the mother.

We affirm all other aspects of the trial court's decision. "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Farley, 9 Va. App. at 328, 387 S.E.2d at 795 (citation omitted).

The decision to postpone entry of a custody decree for a year was necessitated by the department's failure to investigate relative placement earlier. The trial court recognized that its paramount concern was the best interests of the child. Code § 16.1-283(A); Norfolk Div. of Soc. Servs. v. Hardy, 42 Va. App. 546, 554-55, 593 S.E.2d 528, 532 (2004) (even though mother unable to care for her children, termination not in their best interest). The trial court carefully crafted a decree that ordered evaluation of the evolving relationships so that it would be able to render a final decision on custody at the end of the year.

While recognizing the bond the child developed with his foster family and that he thrived in their care, the trial court did not foreclose the possibility that custody would be granted to his

relatives. To ascertain whether granting the relatives custody would be in the child's best interest, the judge awarded the relatives visitation[4] that increased over the course of the year. It minimized the emotional and psychological harm and stress to the child by keeping physical custody with the foster parents.

The trial court's creative proposal sought to explore relative placement cautiously through a slow transition period, and if relative placement did not work, it sought to minimize the harm to the child. Postponing entry of the final order did not fail to mitigate harm to the child by interfering with the foster care placement. It did not arbitrarily reject the testimony of both experts. It was not inappropriate to order the parties to cooperate with the expert evaluating the process.[5] The trial court appropriately exercised its discretion in making those choices.

Finally, we address the argument that the trial court erred by hearing the petitions for termination and custody simultaneously. The parties by-passed hearing by the district court and presented the petitions as a single, related set of appeals in order to expedite a trial *de novo*. The case involved several parties, some from out of state, a number of attorneys, and interrelated legal and factual issues. Code § 16.1-283 does not require separate termination and custody hearings. Stanley v. Fairfax County Dep't of Soc. Servs., 10 Va. App. 596, 601-02, 395 S.E.2d 199, 202 (1990), aff'd, 242 Va. 60, 405 S.E.2d 621 (1991), held, "We construe the term 'separate proceeding' as used in Code § 16.1-283 to mean a [termination] hearing separate and distinct

---

[4] The Castles live at least five hours away, and their visits have been hampered by the fact that the uncle is still employed.

[5] The foster parents' expert opined that the child would suffer psychological harm if removed from their care. While the relatives' expert agreed that the child had bonded with the foster family, he questioned the experts' methods and conclusions and opined that a transition period would minimize any resulting harm. "Where experts offer conflicting testimony, it is within the discretion of the trial court to select either opinion." Rowe v. Rowe, 24 Va. App. 123, 140, 480 S.E.2d 760, 768 (1997). See also Hoebelheinrich v. Hoebelheinrich, 43 Va. App. 543, 552-53, 600 S.E.2d 152, 156 (2004) (judge determines weight and credibility of experts' testimony).

from an abuse and neglect adjudication, entrustment disposition, or foster care placement and review." The trial court did not abuse its discretion in hearing the petitions simultaneously.

We affirm the finding that the department did not adequately investigate relative placement, but we conclude the finding precluded the termination of parental rights until the evidence was before the court. Accordingly, we reverse the termination of the mother's residual parental rights, affirm the trial court in all other respects, and remand for final custody determination.

Reversed and remanded.