COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


JOSEPH WAYNE SCOTT

                                                            MEMORANDUM OPINION[*] BY
v.       Record No. 2422-06-1                     JUDGE JAMES W. HALEY, JR.
                                                               DECEMBER 18, 2007
JOAN A. SCOTT


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Westbrook J. Parker, Judge

Barry Kantor (Christie, Kantor, Griffin & Smith, on brief), for
appellant.

Kenneth A. Moreno (Kershner & Moreno, on brief), for appellee.


Joseph Wayne Scott ("husband") appeals from an equitable distribution order, arguing

1) that the trial court erred in valuing husband's accounting practice at $145,200 and finding

90% of the practice to be marital property subject to equitable distribution; and 2) that the trial

court erred in ordering him to pay some of his wife's attorney's fees.  For the reasons that follow,

we find no reversible error and affirm the judgment of the trial court.

STATEMENT OF FACTS

Husband married Joan A. Scott ("wife") on August 5, 1989.  They separated on August

11, 2003.  Since 1982, husband has worked as a certified public accountant for the accounting

firm of Frank E. Sheffer & Company ("Sheffer & Co.").  According to a stock agreement signed

by the original shareholders in 1983, Sheffer & Co. was organized as a corporation under the

laws of Virginia.  All stockholders in the company were licensed accountants, and each of the

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

original stockholders had an interest in the company of 1,000 shares of Class A common stock. Frank Edward Sheffer, the founder and president of the firm, also received 50,000 Class B shares according to the original agreement. In 1987, husband was made a shareholder in the company and received 7½ shares of stock. According to the testimony of husband's colleagues at Sheffer & Co., husband received additional shares in 1988, 1989, and 1990.

It is not precisely clear whether husband's stock in Sheffer & Co. also formed 20% of the equity in the company at the time of his separation from wife because another accountant, Charles Louder, was given shares of stock at the same time as husband. Frank Sheffer's testimony indicated that only he, Arthur Robb, and husband, were shareholders at the time of the equitable distribution hearing (March 31, 2006), suggesting Mr. Louder had left the company by then. But neither he nor any other witness mentioned when Mr. Louder left the firm and how his leaving affected each of the remaining shareholders' stake in the company.

The 1983 shareholder agreement requires that stockholders who end their employment with Sheffer & Co. sell their shares back to the company. In 1996, Steven Huber, one of the original stockholders, left the firm, gave up his shares, and received severance pay of $250,000. Mr. Huber testified that the employment agreement entitled him to receive the increase in accounts receivable and work in process from the time he acquired his stock to the time he left the company multiplied by his ownership interest in the company. Mr. Huber also testified that $250,000 was substantially less than he was entitled to according to the agreement, but that the agreement's formula was discussed in their negotiating the sum he did receive. Husband, all of his colleagues, and even wife's expert, Gregory Lawson, testified that husband would receive no money under the employment agreement if he were to leave the company because the debts of the company had greatly increased following Mr. Huber's departure from the firm. Frank

Sheffer testified the company's debt problem resulted from their failure to bill their clients for approximately two years.

Sheffer & Co. has no stock book, no meetings of the board of directors, and no corporate minutes. Other than husband, who introduced into evidence a stock certificate for 18 and 2/3 shares dated January 1, 1990, none of the shareholders who testified could say whether they had ever been issued stock certificates. Wife's expert witness received written confirmation that Arthur Robb and Frank Sheffer each owned 40% of the company and that husband owned the other 20%. However, the three stockholders all shared equally in the profits of their accounting business, each receiving one third of the profits. Husband testified that this was $113,542 in 2005. There were no documents reflecting any changes to the stockholders' respective ownership interests as new stockholders joined the firm and others left. Mr. Sheffer and Mr. Robb testified that they conducted their business with one another largely by informal agreement. In response to Mr. Robb's testimony, the trial judge asked him about how husband's original seven and a half shares could constitute a significant stake in the company if the original shareholders each owned 1,000 shares. Mr. Robb answered that he believed that at some point the firm informally agreed to reduce the number of shares because of, "the cost of filing with the security exchange. SCC." Mr. Robb mentioned that there was no written agreement reflecting this change in the number of outstanding shares.

Gregory Lawson, an accountant, was certified as an expert witness in business valuation. Mr. Lawson testified as to the value of Sheffer & Co. Wife introduced into evidence a report, written by Mr. Lawson, that included estimates of the company's intrinsic value, or the economic benefit the owner derived from ownership of the business, based on ownership interests in the company of 20% and a 33.33%. Mr. Lawson also answered questions from counsel for both

parties explaining the valuation methods and sources of information he used. Mr. Lawson made

his estimates after meeting with the shareholders. Mr. Lawson also reviewed the employment

and shareholder agreements, the firm's corporate tax returns for 1998 through 2004, the firm's

salary schedules, and summaries of the firm's accounts receivable and work in process for

December 2003 and December 2004. Using a capitalization of earnings method, and after

subtracting the debts of the company and his estimate of the proportion of husband's share of the

business attributable to husband's personal goodwill, Mr. Lawson valued husband's ownership

interest in 20% of Sheffer & Co. at between $83,500 and $87,200. Mr. Lawson valued a 33.33%

ownership interest in the company at between $139,200 and $145,200.

The trial court declined to value Sheffer & Co. using Mr. Lawson's 20% figure because:

> While it appears that Frank Edward Sheffer and Company registers
> with the State Corporation Commission each year, that is the only
> act consistent with this entity being a corporation. Mr. Scott owns
> one-third of the business, but the Court cannot use the purported
> value of the stock because this is a corporation in name only. The
> original stock agreement describes 3000 shares of Class A stock
> (in 1983) and the testimony was that 4 years later, Mr. Scott was
> given 5% of the stock, which amounted to 7.5 shares – that doesn't
> compute; additionally, Mr. Scott was given (or it is alleged he was
> given) 18-3/4 shares of stock between 1987-1990, but the stock
> certificate describes 18-2/3 shares. While this is a miniscule
> difference, it illustrates that no one knows what the stock amounts
> are. After Mr. Huber left the firm, Mr. Scott became the owner of
> 20% of the stock, but there is no legal explanation of that; to
> further complicate matters no other stock certificates are available
> as proof of ownership. There are no original corporate documents
> or corporate minutes to establish that a corporation in reality exists.

Instead, the trial court used Mr. Lawson's 33.33% figure, concluding that husband's stake in

Sheffer & Co. had a value of $145,200, of which 90% was marital property. That percentage is

approximately the proportion of husband's time as a shareholder in Sheffer & Co. that he was

married to wife before their August 11, 2003 separation.  The trial court awarded wife 40% of the share of husband's accounting practice classified as marital, or $52,272.

The trial court also ordered husband to pay wife $4,500 of her attorney's fees, having found that this was the cost of unnecessary discovery expenses.  The trial court found that these expenses were the result of Sheffer & Co.'s defiance of wife's subpoena *duces tecum*.  Husband objected to paying the $4,500 on the grounds that it was the corporation's lack of cooperation, and not his own, that caused these unnecessary expenses.

ANALYSIS

Our applicable standard of review gives considerable deference to the discretion of the trial court.

> Unless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution award will not be reversed upon appeal.

Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990).  "[T]he value of property is an issue of fact, not of law."  Howell v. Howell, 31 Va. App. 332, 340, 523 S.E.2d 514, 518 (2000). "We will not disturb a trial court's finding of the value of an asset unless the finding is plainly wrong or unsupported by the evidence."  Shooltz v. Shooltz, 27 Va. App. 264, 275, 498 S.E.2d 437, 442 (1998).  However, "a trial court 'by definition abuses its discretion when it makes an error of law.'"  Id. at 271, 498 S.E.2d at 441 (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).  "An abuse of discretion also exists if the trial court fails to consider the statutory factors required to be part of the decisionmaking process."  Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836-37 (2003).

The Value of Husband's Accounting Practice

To determine the value of an asset for equitable distribution purposes, we look to the intrinsic value of the asset to the parties. Owens v. Owens, 41 Va. App. 844, 854, 589 S.E.2d 488, 493 (2003). Intrinsic value is a subjective concept, and different methods of valuation may be appropriate to different situations. Howell, 31 Va. App. at 339, 523 S.E.2d at 517-18. Prior decisions cite this need for flexibility as the reason for giving great weight to the factual findings of trial courts. Id. at 339, 523 S.E.2d at 518; Hoebelheinrich v. Hoebelheinrich, 43 Va. App. 543, 551, 600 S.E.2d 152, 155-56 (2004).

Husband argues that the trial court erred in accepting Mr. Lawson's testimony that his interest in Sheffer & Co. was worth $145,200. We disagree. Husband contends this was too high a figure. He cites the evidence of the large debts the company owed to banks and to Mr. Sheffer personally. Husband also emphasizes the testimony from all the witnesses, including Mr. Lawson, that he would not receive anything for his shares if he left the company. Mr. Lawson's valuation letter and his related testimony both reflect that he reached the $145,200 figure only after deducting the debts to which husband refers from the assets of the company. See Hoebelheinrich, 43 Va. App. at 552, 600 S.E.2d at 156.

As for the probability that husband would not receive anything for his shares if he left, our prior decisions suggest this is too speculative a consideration to overcome the deference we owe to the finder of fact because there was no evidence that husband actually planned to leave the firm. Indeed, husband's testimony was that he planned to stay because of a non-competition contract that he had signed. "The reason for rejecting the value set by buyout provisions is that they do not necessarily represent the intrinsic worth of the stock to the parties." Bosserman v. Bosserman, 9 Va. App. 1, 6, 384 S.E.2d 104, 107 (1989). In Owens, husband complained that

the trial court had overvalued his business because it did not include "lack of marketability discount." Mr. Owens argued that any buyer would pay less for his 50% in the company than the trial court awarded because the interest offered for sale was not a controlling interest.

> If a sale is improbable, the discount need not be applied. See e.g., Howell, 31 Va. App. at 345, 523 S.E.2d at 521 (approving trial court's rejection of minority and marketability discounts for a minority equity interest in law partnership where "no transfer of the partnership interest was foreseeable and no one in the firm, nor any group within it, exercised majority control").

Owens, 41 Va. App. at 856, 589 S.E.2d at 494-95. Mr. Lawson offered a thorough explanation for his conclusion that husband's stake in the firm was worth $145,200 in 2004. He also described the sources of information he used in valuing the company: meetings with the stockholders, the company's tax returns, accounts receivable, work in process, and the written stockholder and employment agreements of the company. Because Mr. Lawson offered a reasonable explanation for his treatment of the debts, it was within the trial court's discretion to value the accounting practice as it did. Because there was no evidence that husband planned to leave the company, we hold the trial court did not err in accepting Mr. Lawson's figure instead of what husband might have received for his shares if he had left the company.

<u>Husband's Ownership Interest in the Accounting Practice</u>

Even if the trial judge valued the accounting practice correctly, husband claims that the trial court erred in valuing his ownership interest in the accounting practice at 33.33% instead of 20%, which his colleagues testified was his interest in the outstanding stock of the company. We also disagree with husband on this question. In light of the deferential standard of review we owe to the trial court, we will not reverse this finding because the trial court's use of a 33.33% figure was supported by credible evidence. Specifically, all of husband's colleagues testified that the economic rewards they received in exchange for their work were not proportional to

- 7 -

their respective ownership interests in the outstanding stock. Mr. Robb, Mr. Sheffer, and husband ostensibly owned 40%, 40%, and 20%, respectively, of the stock of Sheffer & Co. Yet they all split the profits and losses one third each. Because the trial court was bound by our prior decisions to find the intrinsic value of Sheffer & Co. and intrinsic value is "a subjective concept that looks to the worth of the property to the parties," Howell, 31 Va. App. at 339, 523 S.E.2d at 517, we hold the trial court did not err in deciding that the 33.33% share husband had in the economic profits of the company was a more accurate measure of the worth of the property to the parties than his purported 20% interest in the company's stock.

In affirming the trial court's use of the 33.33% figure, we hold that it was acceptable for the trial court to treat Sheffer & Co. as a partnership rather than as a corporation. The shareholders testified that they had not observed any corporate formalities since their lawyer drew up the original stock agreement between the original three shareholders in 1983. Yet these formalities were important to the maintenance of Sheffer & Co.'s status as a corporation. Indeed, the Code of Virginia provides for the automatic termination of a corporation's existence if a domestic corporation does not file an annual report with the State Corporation Commission. Code § 13.1-752. Moreover, "[t]he existence of a partnership is a question of fact and the finding of such fact by the trial court will not be disturbed on appeal unless it is clearly erroneous." United States v. Neel, 235 F.2d 395, 399 (10th Cir. 1956); see Boyd, Payne, Gates & Farthing, P.C. v. Payne, Gates, Farthing & Radd, P.C., 244 Va. 418, 422 S.E.2d 784 (1992) (Law firm that incorporated for tax purposes but otherwise continued to function as a partnership was subject to partnership law). We therefore hold that it was not error to decide husband's ownership interest in Sheffer & Co. was 33.33%.

<u>90% Marital/10% Separate Hybrid Property Classification</u>

Husband also argues that the trial court erred in classifying husband's stake in Sheffer & Co. as hybrid property pursuant to Code § 20-107.3(A)(3) and in determining that this property was 90% marital, 10% separate because (1) the evidence that he received 75% of his shares before the marriage meant that, at most, 25% of his stake in the accounting practice was marital property, and (2) wife failed to prove the value of Sheffer & Co. was an increase in the value of husband's separate property due to the personal efforts of either party.[1]

We reject husband's first argument because, pursuant to Code § 20-107.3(A)(1) property is presumed to be marital property. The only stock certificate admitted into evidence was dated 1990, after the parties' 1989 marriage. Because the number of shares of stock husband owned was unrelated to the economic benefits he received from working for the company, the trial court was correct in concluding that the number of shares of stock husband owned was not the best measure of determining intrinsic value. Having affirmed this holding, it would be illogical to decide that the time at which he acquired additional, but for our purposes irrelevant, shares determines the percentage of his accountancy practice classified as marital. Indeed, Sheffer & Co.'s sloppy corporate recordkeeping allowed the trial court to treat them as a partnership. This conclusion is justified by the facts and also inconsistent with allowing stock ownership to govern the percentage of the accounting practice classified as husband's or the percentage of husband's interest in the accounting practice classified as marital.

---

[1] Wife argues that husband failed to make a timely objection on this basis and we should not consider it pursuant to Rule 5A:18. However the transcript includes the following objection from defense counsel: "But they have the burden of proving what participation, what personal effort my client made to increase that value from day one until now. I don't believe they have submitted that, they have met that burden."

We also believe that wife met her statutory burden, pursuant to Code § 20-107.3(A)(3), of proving an increase in the value of husband's separate property and in proving that the increase in value was caused by husband's personal efforts. An increase in the value of husband's stake in the accounting practice was implicit in the trial court's use of the part marital, part separate hybrid property classification of Code § 20-107.3(A)(3). "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Giving the benefit of all reasonable inferences to the party prevailing below, the existence of an increase was supported by the testimony of Mr. Lawson that husband's interest was $142,500 in 2004 together with the testimony of Mr. Lawson and of husband's colleagues that his shares were worth nothing at the time of the marriage.

We also have no difficulty concluding that the increase in value of husband's accounting practice was due to his personal efforts. In his testimony, Mr. Lawson explained why any increase in the value of husband's practice was not passive appreciation:

> And personal service corporations, value is created through – and particularly in relation to law firms and CPA firms – through the personal efforts of its principals and their direction of their staff. I think particularly as it relates to CPA practices. I mean the value is not stagnant. You've got to recreate that value every three or four years. The original value evaporates and you replace it with new clients, new services to existing clients, new accounts receivable, new work in process.

Husband's colleagues testified that he worked full time as an accountant. The written conditions of husband's employment required husband to "devote himself to the full-time practice of accountancy . . . ." The text of the original 1983 stock agreement also links the ownership of shares of stock in the company to the shareholder's continued employment with the company. These facts particular to personal services companies distinguish husband's accounting practice

from the assets examined in the authorities cited in appellant's brief. <u>Rowe v. Rowe</u>, 24 Va. App. 123, 480 S.E.2d 760 (1997) (newspaper company); <u>Congdon</u>, 40 Va. App. 255, 578 S.E.2d 883 (trucking company); <u>Martin v. Martin</u>, 27 Va. App. 745, 501 S.E.2d 450 (1998) (house); <u>Bchara v. Bchara</u>, 38 Va. App. 302, 563 S.E.2 398 (2002) (house). The assets in these cases were all susceptible to passive economic appreciation in a way that husband's accounting practice was not. The value of the practice itself and the very existence of husband's continued ownership interest in the practice both depended on husband's personal efforts. We therefore affirm the trial court's distribution of the parties' hybrid property.

Attorney's Fees

The trial court ordered husband to pay a portion of wife's attorney's fees because Sheffer & Co. defied wife's subpoena *duces tecum*. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." <u>Graves v. Graves</u>, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Husband argues that the trial court abused its discretion because the defiance of the subpoena and resulting unnecessary discovery expenses were not his actions, but the actions of the corporation. Because of our holding above that the trial court was allowed to treat Sheffer & Co. as a partnership instead of a corporation, we conclude that the trial court did not abuse its discretion in its order of attorney's fees.

<u>Affirmed.</u>