COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Frank and Humphreys
Argued at Chesapeake, Virginia


VIVIAN T. SHACKELFORD
                                              OPINION BY
v.    Record No. 0746-02-1           JUDGE ROBERT P. FRANK
                                           NOVEMBER 19, 2002
GARLAND T. SHACKELFORD


            FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                 Barnard F. Jennings, Judge Designate

            McClanahan Ingles (Martin, Ingles & Ingles,
            Ltd., on briefs), for appellant.

            E. Thomas Cox for appellee.


     Vivian T. Shackelford (wife) and Garland T. Shackelford

(husband) were divorced on February 22, 2002.  Wife appeals from

that final decree, arguing the trial court erred (1) in its

valuing of the marital businesses and in its equitable

distribution of those properties, (2) in failing to award interest

during the payment period of wife's monetary award, (3) in

awarding wife less spousal support than husband recommended, and

(4) in failing to award wife half of the rent collected during the

parties' separation.[1]  For the reasons below, we affirm the trial

court's order.

---

     [1] Appellant abandoned the issue of rental income at oral
argument.  Therefore, we do not address this issue in this
opinion.

Background

Wife and husband were married for almost thirty-eight years and had two grown children. For most of the marriage, wife remained at home, although she did work as a part-time nurse for thirteen years. Husband started two businesses during the marriage: Shackelford Seafood Corp. (Shackelford Seafood) in 1966 and B.L.P. Seafood Transfer Inc. (B.L.P.) in 1995. The parties separated in January 1996, when wife asked husband to leave the marital home because he was romantically involved with another woman.

Husband paid wife's expenses after the separation,[2] including the mortgage on the marital home, maid and lawn care services, utilities, country club membership, car payments, and medical expenses. A _pendente_ _lite_ order, entered by the juvenile and domestic relations court, also required husband to pay wife "$500 per week from his corporation."

The trial court heard evidence _ore_ _tenus_ on June 26, 2001, and received into evidence numerous documents. The parties agreed wife remained at home during the marriage, making significant contributions to the family, while husband worked. Shackelford Seafood depended heavily on husband's presence, but B.L.P., which was based in Florida, was run initially by the parties' son.

---

[2] Most, if not all, of these expenses were paid through Shackelford Seafood, which is a privately held business owned by husband.

-

Shackelford Seafood became wholly owned by husband in 1987, when he bought out the fifty-percent interest of Gerald Thomas for $500,000. Husband could not remember how this price was reached. William Stephens, testifying as wife's expert, valued Shackelford Seafood at $1,635,785. Gregory Lawson, husband's expert, testified the business was worth $838,000. Both men defended their valuations during their testimony.

Stephens initially valued B.L.P. at around $43,000, but he increased that valuation to $683,738 after receiving information on B.L.P.'s income for the first three months of 2001. Lawson valued B.L.P. at $43,500.

Both parties presented the court with estimates of wife's expenses. Wife testified that, although she had worked part-time as a nurse for thirteen years during the marriage, she had not worked since 1995. Wife had several medical problems.

In closing arguments, the parties argued over the valuation of the businesses. Wife suggested she receive $6,000 in spousal support. Husband suggested $4,000 in spousal support and admitted that some, although not all, of wife's expenses should be added to that amount.

The trial court announced its judgment from the bench, valuing Shackelford Seafood at $838,000 and B.L.P. at $43,500. The court found wife was entitled to forty percent of Shackelford Seafood and fifty percent of B.L.P. Husband was allowed to keep both businesses, and wife was allowed to keep the marital home.

-

The court set spousal support to wife at $5,000 per month and set husband's payment to wife for her portion of the marital estate at $486,005 over ten years. The final decree specified no interest was awarded for the ten-year payment period.

## Analysis

On appeal, we review the evidence and the inferences in the light most favorable to the party prevailing below. Gottlieb v. Gottlieb, 19 Va. App. 77, 81, 448 S.E.2d 666, 669 (1994); Rogers v. Yourshaw, 18 Va. App. 816, 818, 448 S.E.2d 884, 885 (1994). A final decree of divorce is presumed correct, and we defer to the factual findings of the court, such as valuation of marital property, where the court took evidence ore tenus. Id. at 83, 448 S.E.2d at 670.

### A. The Businesses

#### 1. Valuation

Wife argues husband's purchase of the outstanding interest in Shackelford Seafood is evidence of the trial court's undervaluing the business. Wife contends, because husband paid $500,000 in 1987 for half the business, the whole business was worth more than one million dollars in 2001. She argues the business could not be valued at less than a million dollars as the business had grown since 1987.

When announcing his valuation of the businesses, the judge explained he "was much more impressed with Mr. Lawson in his reasoning and his logic and his conclusion." We see nothing wrong

-

with this conclusion.  The trial court was entitled to accept

Lawson's valuation.  Lawson explained his credentials included

valuing other seafood businesses.  He explained why his method of

valuation was best in this situation.  He explained his

disagreements with Stephens's methodology.

Lawson also explained why the 1987 buy out from Thomas was

not an important factor in setting Shackelford Seafood's value in

2001:

> The valuation of a partial interest, when
> then converted into 100 percent interest,
> would not be arithmetically the same [as
> multiplying 500,000 by two].  In the case of
> Mr. Thomas, one would be willing to pay him
> specifically above the pro rata business
> because he had the ability to exercise
> blockage, decisions could not be made within
> the business without his consent and
> approval, and with those situations there's
> a long list of precedence within business
> valuation that blockage premiums go up to
> about twenty percent.  You pay twenty
> percent more when you're removing a blockage
> ownership unit than you would in everything
> else.
>
>     *      *      *      *      *      *      *
>
> So, in one respect [husband] really had no
> control of that company prior to acquiring
> Mr. Thomas's interest, and, therefore, would
> be willing to pay significantly above the
> pro rata in order to gain control.

The trial court heard the testimony of the two experts and

evaluated those experts' opinions.  We defer to the trial

court's evaluation of the credibility of the witnesses who

testify ore tenus.  Moreno v. Moreno, 24 Va. App. 190, 195, 480

-

S.E.2d 792, 795 (1997).  Based on the evidence, we cannot find the trial court was plainly wrong in accepting Lawson's opinion and setting the value for Shackelford Seafood at $838,000.

Wife also argues the trial court abused its discretion in setting the value of B.L.P.  She contends on brief, "The only evidence before the Court regarding the value of BLP was Mr. Stephens' [sic] current valuation at $683,738."  We disagree.

The trial court had sufficient evidence to set the value at $43,500.  Initially, Stephens set the value of B.L.P. at approximately $43,000.  He increased that value to $683,738 when he received income figures from the first three months of 2001.

Lawson "did a complete analysis [of B.L.P.,] but not a written report."  He reviewed Stephens's initial report and generally agreed with its valuation, although he used a different valuation method.  He testified, both at trial and during depositions, that B.L.P. was worth $43,500.

Lawson did not revise his valuation based on the three months of income figures.  He explained:

> The seafood industry is very similar to a CPA practice where you do all of your work in January through March, tax season.  In seafood industry and transfer of seafood products, that's their peak season; January through March is the peak season in the industry because he's shipping all up or down the East Coast and into the Midwest.
>
> There are no fish available in the colder climates from the Carolinas up through New England.  During that time of year, winter season, your fin fish and

-

seafood products are not available locally at that point in time, and, therefore, have to be shipped in from South America.  It stands to reason, if you have shipping experience, that's peak season just like tax season for a CPA firm.

Further, in looking at the three-month period, [Stephens] ignores all the expenses, normal expenses, a business would have if the company would not have a bill for that month.

\*      \*      \*      \*      \*      \*      \*

So, there's a whole slew of expenses he ignores in looking at the three-month period that would be normal and ordinary expense of the company.

Lawson also testified regarding other problems and inconsistencies in Stephens's revised valuation of B.L.P.

The court had sufficient information based on Lawson's testimony to value B.L.P. at $43,500.  We do not find the trial court's valuation of either business was plainly wrong.

## 2.  Equitable Distribution

Wife argues the trial court erred in awarding her only forty percent of Shackelford Seafood.  She contends husband was unfaithful during the marriage, while she made significant contributions to the home and the business.  She argues the forty-percent award was arbitrary, as the trial court awarded her fifty percent of B.L.P., without any "evidence or explanation by the Court to justify the disparity."  We disagree.

-

The final decree of divorce noted: "The Court, after considering the evidence presented herein, and the equitable distribution factors as set forth in [Code] § 20-107.3 . . . made the following findings."  At the hearing, the trial court explained the equitable division of the businesses:

> I feel that [wife], for a number of reasons, no question but that she has been a good wife, she's really supported the household and a lot more than a number of ours would have done in similar circumstances, and certainly she did an excellent job managing the children, and she's entitled to a lot of credit for that.
>
> On the other hand, [husband], with some assistance from his wife over time, really was the instrumental part of Shackelford Seafood.  Except for [husband], in his absence the business would be pretty close to non-existing.  I don't mean – in making that determination, I don't think there's any question but that he is really the brains behind it and the motivating factor behind the business itself, the seafood as well as the B.L.P.  Under those circumstances, I would make a determination that [wife] is entitled to forty percent of the business.  Of B.L.P., she would be entitled to one half the valuation put on that.

"In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one. Accordingly, we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Artis v. Artis, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987).  The court is not required to elaborate upon the exact weight given each piece of evidence and

-

each factor used to reach its decisions.  As this Court has explained previously:

> The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of these factors.  This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.  It does mean, however, that the court's findings must have some foundation based on the evidence presented.

Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986) (discussing spousal support).

We find nothing in the Code or case law, and wife provides no authority, that requires a fifty-fifty distribution of marital assets.  A fifty-percent distribution is not presumptively appropriate.  Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986).  Instead, a trial court considers the factors in Code § 20-107.3, to make a decision regarding division of marital property.

Wife argues the trial court "could have and should have" weighed husband's alleged adultery in the equitable distribution, "but it declined to do so."  However, the final decree clearly states the factors in Code § 20-107.3 were considered.  Nothing required the court to emphasize the factor of adultery in making the distribution.  Instead, the trial court could use its discretion in weighing any finding of

-

adultery.  See Aster v. Gross, 7 Va. App. 1, 5-6, 371 S.E.2d 833, 836 (1988); O'Loughlin v. O'Loughlin, 20 Va. App. 522, 526-27, 458 S.E.2d 323, 325-26 (1995).

The evidence proved wife made significant contributions to the family, but she had little to do with the businesses.  Her expert testified husband was the "key man in the operation" of Shackelford Seafood.  The newer business, B.L.P., was organized as a shipping component of the older company.  According to the testimony, B.L.P. was started to provide employment to the parties' son while he was in Florida.  Once he left, husband took over that business.  This history suggests husband was not as integral to B.L.P.'s operations.

Based on this evidence, we cannot find the award to wife of forty percent in the business that husband worked to develop for over thirty years, and fifty percent in the business husband started less than ten years ago for someone else to run, was an abuse of discretion.

### B.  Interest on Monetary Award

Wife argues the trial court erred in failing to award her interest, pursuant to Code § 8.01-382, on the monetary award that husband has ten years to pay.  We disagree with wife.

Code § 8.01-382 states:

> In any action at law or suit in equity,
> . . . the judgment or decree of the court,
> may provide for interest on any principal
> sum awarded, or any part thereof, and fix
> the period at which the interest shall

-

> commence.  The judgment or decree entered
> shall provide for such interest until such
> principal sum be paid.

This Code section applies in divorce cases.  See, e.g., Ragsdale v. Ragsdale, 30 Va. App. 283, 293, 516 S.E.2d 698, 703 (1999). However, Code § 20-107.3(D) further explains, "The provisions of § 8.01-382 . . . shall apply unless the court orders otherwise." (Emphasis added.)

Here, the trial court specified in paragraph eleven of the final decree that interest on the monetary award was not awarded.  As the court "ordered otherwise," wife is not entitled to interest under Code § 8.01-382.

### C.  Spousal Support

Finally, wife argues the trial court erred in awarding spousal support of $5,000 per month.  Wife claims she demonstrated a need for $6,999 per month based on her expenses prior to the division of marital property.[3]  She contends, "[T]he very least amount of support should have been the $5,800 which husband paid voluntarily as ordered pendente lite in a consent order."[4]  She also argues husband has the ability to pay the

---

[3] In closing argument to the trial court, however, wife asked for support payments of $6,000 a month.  She did not ask for husband to pay any additional bills, such as the car loan or the mortgage.

[4] We note husband's support payments under this order were not binding on the trial court.  Code § 20-103(E); Holmes v. Holmes, 7 Va. App. 472, 484, 375 S.E.2d 387, 394 (1988) (noting the amount in a temporary order is not a factor the court need consider in determining the amount of spousal support).

-

larger amount.  On brief, wife also claims "the Court did not properly consider the statutory factors enumerated in Section 20-107.1."

When the trial court announced its decision, the following exchange occurred:

> [WIFE'S ATTORNEY]:  And addition to the $5,000, even in addition to that, he would be responsible, we would request, for the automobile payment, even as in [husband's attorney's] proposal, until that's paid off.
>
> THE COURT:  I considered that in the alimony support payments.
>
> [WIFE'S ATTORNEY]:  Without belaboring it, that figure is less than the [husband] proposed, Judge Jennings.  I think that covers all the questions . . . .

Nothing else was said regarding spousal support.

Wife also submitted several objections to the final decree. One objection reads:

> 6.  The spousal support award was substantially less than the [husband] had suggested is appropriate, and less than [wife] needs and [husband] has the ability to pay and failed to recognize [husband's] unreported income or the fact that [husband's] suggested spousal support exceeded his adjusted gross income, confirming that [husband] failed to report his true income (attached hereto is a copy of [husband's] proposal that he pay $5,723 per month spousal support, which equals $68,676 per year, yet [husband's] adjusted gross income on his attached 2000 tax return was $65,770)[.]

-

Another objection claims: "5. The spousal support award was less than the [husband] had agreed to pay." Accordingly, wife has not preserved any argument related to Code § 20-107.1, as her objections at trial were not based on that statute. See Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737-38 (1991) (en banc); Rule 5A:18.

Wife did preserve her argument that the trial court erred in awarding $5,000 per month because husband's offer was larger. The factual premise of this argument is wrong, however. During closing argument, husband argued the court should set spousal support at $4,000 as well as order him to pay off the automobile loan, approximately $569 a month.[5] This recommendation clearly was less than the $5,000 ultimately awarded by the trial court.

Additionally, husband's earlier proposal, to which wife refers in her written objection, did not necessarily recommend more than $5,000 per month. The base support recommended by husband in this proposal was $4,000. He also recommended an additional $1,723 "until car paid off" and "until home mortgage paid off." This additional amount extended for a finite period, in contrast to the additional $1,000 that the trial court actually awarded to wife. Also, this proposal was based on a different equitable division and monetary award than the trial court eventually made.

---

[5] The record does not include the amount of the outstanding balance.

-

More importantly, wife did not accept husband's proposal. As the proposal did not represent a written agreement, it was not binding on the court. Cf. Flanary v. Milton, 263 Va. 20, 22-24, 556 S.E.2d 767, 768-69 (2002) (noting oral agreements regarding divorce issues are not binding on the trial court). Wife chose to allow the trial court to determine the amount of support payments. She cannot now claim the court was bound by husband's proposal.

Wife also argues the trial court failed to recognize husband's underreported income and, therefore, did not award sufficient spousal support. Again, the record does not support wife's factual allegation.

Wife's written objection notes husband's federal tax forms set his income as $65,770 for 2000. If the trial court believed this figure, then the support award left husband with $5,770 of his yearly income. We do not believe the court intended to leave husband in poverty. Clearly, the trial court did not accept this figure, as husband could not pay $5,000 a month on this salary.

The record also contains husband's tax forms for other years that indicate incomes of $178,370 and $173,522. Husband's proffer admitted an income of $3,885 per month. In light of the evidence, we conclude the trial court did not assume an income of $65,770 in setting spousal support.

-

Wife argues she proved a need for more than $5,000 a month. However, during the parties' separation, she lived on approximately $5,800 per month, without the income and assets from the equitable distribution.[6]  Additionally, wife provides no statute or case law that suggests her need is the sole and controlling factor in support determinations.  Wife is not left destitute.  We find the trial court did not err in determining spousal support.  We affirm the award of $5,000 per month.

## Conclusion

The trial court did not err in determining the awards here. We affirm the final decree of divorce.

Affirmed.

---

[6] Wife receives ten yearly payments of approximately $48,600, the marital home, life insurance policies, an IRA account, and a van under the final decree of divorce.  She is responsible for the outstanding amount on the home mortgage and the van loan.