COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and Retired Judge Strickland[*]
Argued at Salem, Virginia


LINDA CAVUOTO

                                                                OPINION BY
v.        Record No. 0596-04-3                      JUDGE WALTER S. FELTON, JR.
                                                              NOVEMBER 23, 2004
BUCHANAN COUNTY DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
                              Keary R. Williams, Judge

          Terrence Shea Cook (T. Shea Cook, P.C., on brief), for appellant.

          Russell Vern Presley, II (Street Law Firm, LLP, on brief), for
          appellee.


        Linda Cavuoto (appellant) appeals that portion of the judgment of the Circuit Court of

Buchanan County requiring her to undergo medical examination and evaluation at the University of

Virginia Medical Center.  Appellant contends that the trial court erred in compelling her to submit

to the examination and evaluation without making the necessary finding pursuant to Code

§ 37.1-134.21(H) that she was incapable of making an informed decision regarding her health.  We

agree and reverse that portion of the judgment of the trial court.[1]


---

        [*] Retired Judge Diane McQ. Strickland participated in this case by designation pursuant
to Code § 17.1-400(C).

        [1] The trial court also ordered appellant to be released from the Heritage Hall nursing
home where she had been committed under an adult protective services emergency order.  That
portion of the judgment of the trial court is not the subject of this appeal.

BACKGROUND

Appellant is a fifty-one-year-old woman suffering from morbid obesity and depression. She had been disabled for some three years when she moved with her husband to Virginia. She had been bedridden for more than two years. The Buchanan County Department of Social Services (DSS) became involved with appellant in November 2002 after determining she was in need of adult protective services.

Following a fire in the house in which appellant and her husband resided, DSS obtained an emergency court order on December 3, 2003, committing appellant involuntarily to Heritage Hall, a nursing home.[2] On December 9, 2003, the trial court extended the temporary order for an additional five days.[3]

On December 15, 2003, DSS filed a Petition for Treatment and Detention pursuant to Code § 37.1-134.21 seeking a court order authorizing placement of appellant in a nursing home to provide her with care and treatment. DSS asserted that appellant was incapable of making informed health care decisions because of her depression and was incapable of properly caring for herself. DSS also asserted that appellant had been uncooperative while she was a patient at Heritage Hall.

On December 22, 2003, the trial court received evidence *ore tenus* on the petition. Caroline Thompson Schleifer, a licensed professional counselor, testified as to the results of a psychosocial evaluation of appellant she conducted on December 5, 2003 at Heritage Hall. Based on her evaluation of appellant, she opined that appellant understood the purpose of the

---

[2] Pursuant to Code §§ 63.2-1608 and -1609, a court may order involuntary adult protective services through an emergency order "if an adult lacks the capacity to consent to receive adult protective services." Code § 63.2-1608(A).

[3] "Adult protective services may be provided through an appropriate court order only for a period of 15 days. The original order may be renewed once for a five-day period upon a showing to the court that continuation of the original order is necessary to remove the emergency." Code § 63.2-1609.

- 2 -

evaluation and provided pertinent information regarding her medical history.  Appellant informed

Schleifer of her history of depression and of treatment she received prior to moving to Virginia.

Schleifer noted that appellant expressed suicidal thoughts and feelings of "helplessness and

hopelessness" as a result of her deteriorating health and financial circumstances.  Although she

testified that appellant suffered "from depression brought on by major life stressors," Schleifer

opined that appellant's depression did not impair her ability to make informed decisions

concerning her health.  She advised the trial court that appellant needed additional evaluation at a

more comprehensive medical center; that Heritage Hall was not meeting all of appellant's

medical needs; and that "[appellant] may be a good candidate for going to the University of

Virginia and having a complete orthopedic and diagnostic work up with regard to [her medical

condition]."

After hearing the evidence, the trial court found "that despite her depression, appellant is

capable of making informed health care decisions."  It ordered her released to her husband's care

from the nursing home, where she had been confined pursuant to the emergency protective order.

Nevertheless, relying on Schleifer's recommendation of the need for further evaluation and her

opinion that Heritage Hall could not meet appellant's needs, the trial court ordered appellant to

undergo a comprehensive examination and evaluation to address her depression and obesity and that

DSS schedule an appointment at the University of Virginia Medical Center for that purpose.

ANALYSIS

On appeal, appellant contends that the trial court erred in ordering her, over her objection, to

undergo a comprehensive medical examination and evaluation at the University of Virginia Medical

Center.  She argues that because the trial court found that she was capable of making informed

health care decisions, it lacked authority pursuant to Code § 37.1-134.21 to order her to undergo the

medical examination and evaluation.  Stated differently, she contends that the trial court failed to

make the necessary finding pursuant to Code § 37.1-134.21(H) to require her to undergo the examination without her consent.

In general, a mentally competent adult has the right to refuse medical treatment. See Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 262 (1990) (recognizing the Fourteenth Amendment guarantee of the right to refuse medical treatment) (citing Jacobson v. Massachusetts, 197 U.S. 11, 24-30 (1905) (balancing an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease)).

> "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."

United States v. Charters, 829 F.2d 479, 490-91 (4th Cir. 1987) (quoting Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251 (1890)).[4] However, this fundamental liberty interest must be balanced with the State's interests in protecting persons who cannot make informed health decisions, either because they are incapable of making such decisions or incapable of communicating such decisions. Cruzan, 497 U.S. at 262.

In enacting Code § 37.1-134.21, "[t]he General Assembly provided for involuntary medical treatment in very limited circumstances, where such treatment is determined to be in the best interests of a person *who is unable to give an informed consent* to treatment." Mullins v. Commonwealth, 39 Va. App. 728, 732, 576 S.E.2d 770, 771-72 (2003) (emphasis added).

---

[4] The right to be free of undesired physical touching originates in early law, including the English common law, and "is reflected in the tort of battery which protects the individual against even the slightest unconsented touching." Charters, 829 F.2d at 490 (citing W. Keeton, et al. Prosser and Keeton on The Law of Torts § 9 p. 39 (5th ed. 1984)); see Pugsley v. Privette, 220 Va. 892, 263 S.E.2d 69 (1980) (holding that physician's performing surgery without a patient's informed consent constitutes battery).

"Code § 37.1-134.21 describes the procedures to be followed and the findings a court is to make prior to authorizing such treatment."  Id.

Code § 37.1-134.21(A) provides that the court may order

> [t]he provision, withholding or withdrawal of a specific treatment or course of treatment for a mental or physical disorder, if it finds upon clear and convincing evidence that (i) the person is either incapable of making an informed decision on his own behalf or is incapable of communicating such a decision due to a physical or mental disorder and (ii) the proposed action is in the best interest of the person.

Code § 37.1-134.21(H) requires the trial court to make specific findings as to an individual's capability to make informed health decisions before it can compel medical treatment without that person's consent.  Before ordering an individual to undergo a comprehensive medical evaluation, the trial court must determine:

> 1. That there is no legally authorized person available to give consent [for her];
>
> 2. That [appellant] is incapable either of making an informed decision regarding a specific treatment or course of treatment or is physically or mentally incapable of communicating such a decision;
>
> 3. That [appellant] is unlikely to become capable of making an informed decision or of communicating an informed decision with the time required for decision; and
>
> 4. That the proposed course of treatment is in the best interest of [appellant] . . . .

Code § 37.1-134.21(H).

In terms of making informed health care decisions under Code § 37.1-134.21, we make no distinction between a medical evaluation or examination[5] on the one hand, and medical treatment[6] on the other, both of which may involve intrusive procedures.

The trial court denied DSS's petition to detain appellant for further treatment at Heritage Hall, and ordered her to be released from that nursing home to her husband's care, but then ordered her to undergo a comprehensive examination and evaluation at the University of Virginia Medical Center.

In reviewing a trial court's order for involuntary medical care entered pursuant to Code § 37.1-134.21, "'we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them.'" Mullins, 39 Va. App. at 732, 576 S.E.2d at 772 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)).

After hearing the evidence, the trial court concluded that a comprehensive medical examination and evaluation at the University of Virginia Medical Center was in appellant's best interest, explaining that she had "to lose weight to get better." It further stated that

> [A]s part of the treatment order the Court is going to order that you go to the University of Virginia for this comprehensive examination. If it takes a day, fine; if it's [sic] take a week, fine; if it takes a month, fine. I want this comprehensive evaluation.

While the trial court's determination of the need for a comprehensive medical examination is well founded, it is not enough that the examination be in appellant's best

---

[5] Medical "examination" is defined as the "inspection, palpation, auscultation, percussion, or other means of investigation, especially for diagnosing disease, qualified according to the methods employed as physical examination, radiologic examination, diagnostic imaging examination, or cystoscopic examination." Dorland's Illustrated Medical Dictionary 630 (29th ed. 2000).

[6] Medical "treatment" is defined as "the management and care of a patient for the purpose of combating disease or disorder." Dorland's at 1868.

interests. Code § 37.1-134.21(H) specifically provides that the trial court must find "[t]hat the person who is the subject of the petition is incapable either of making an informed decision regarding a specific treatment or course of treatment or is physically or mentally incapable of communicating such a decision."[7] Here, the trial court explicitly found that "despite her depression, [appellant was] capable of making informed health care decisions . . . ."

DSS concedes on brief that the trial court failed to make the required finding pursuant to Code § 37.1-134.2(H). It contends, however, that the trial court had authority to order appellant to undergo the comprehensive medical examination under its general equity jurisdiction.

We find no authority for the proposition advanced by DSS. The authority of the trial court to order medical treatment is defined by the statute, not by the broader principles of equity. "The rule is well established in Virginia that when the legislature has enacted a comprehensive statutory scheme that encompasses a matter that was not formerly within the purview of the common law, a court, when exercising the jurisdiction conferred under that statutory scheme, may not proceed in derogation of the statutory scheme." Willis v. Gamez, 20 Va. App. 75, 82, 455 S.E.2d 274, 278 (1995) (citing Malpass v. Morgan, 213 Va. 393, 398, 192 S.E.2d 794, 798 (1972)). To grant courts such authority under general equity powers would eviscerate the narrowly drawn statutory scheme balancing the Commonwealth's interests in protecting its citizens with the individual's constitutionally protected liberty interest against compelled medical procedures. Absent a finding pursuant to Code § 37.1-134.21 that appellant was incapable of making an informed health care decision or communicating that decision, the trial court lacked authority, over her objection, to order her confined for an indefinite period to undergo a comprehensive health examination and evaluation.

---

[7] Compare with definition of "incapacitated person" in Code § 37.1-134.6, and the provisions of Code § 37.1-134.14.

We conclude from the record before us that the judgment of the trial court ordering appellant to undergo a comprehensive medical examination and evaluation was plainly wrong and not supported by the evidence.  See Code § 8.01-680.  We, therefore, reverse and vacate that portion of the judgment of the trial court dated March 1, 2004 ordering appellant to "attend the comprehensive evaluation at the University of Virginia Medical Center scheduled by DSS."

<u>Reversed.</u>