COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


TAMMY LEIGH O'ROURKE AND
 BRIAN O'ROURKE
                                                              OPINION BY
v.        Record No. 0172-06-2               JUDGE JOHANNA L. FITZPATRICK
                                                           DECEMBER 19, 2006
VICTOR JOHN VUTURO, JR.


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                           Daniel T. Balfour, Judge

            Steven L. Raynor (Mary L. Barrick; Martin & Raynor, P.C., on
            briefs), for appellant.

            Richard L. Locke; Jeffrey L. Galston, Guardian *ad litem* for the
            minor child (Robert W. Partin; Shannon S. Otto; Locke & Partin,
            PLC, on brief), for appellee.


        This appeal arises from a child visitation dispute following entry of a divorce decree

between Victor John Vuturo, Jr., and Tammy Leigh Vuturo (now O'Rourke).  The child was

born during the marriage but was the child of Brian O'Rourke.  Tammy and Brian O'Rourke,

who are now married, assert the trial court 1) lacked subject matter jurisdiction to adjudicate the

case, 2) erred by granting Vuturo visitation with their child, and 3) erred by "ordering an

evaluation of whether actual harm would be suffered by the child if visitation with Victor Vuturo

was denied, and by accepting and relying on unfounded testimony on causation of an injury from

witnesses who were not qualified under Virginia law to provide such testimony."  The parties

each seek attorney's fees and costs associated with this appeal.  For the reasons that follow, we

affirm the judgment below.

BACKGROUND

On appeal, we view the evidence in the light most favorable to Vuturo, the party prevailing below. Yopp v. Hodges, 43 Va. App. 427, 430, 598 S.E.2d 760, 762 (2004). So viewed, the evidence in this case established the following.

Vuturo and Tammy married on September 16, 1995. During the marriage, beginning in 1998, Tammy had an extramarital affair with Brian O'Rourke, the best man at the couple's wedding, and conceived a child. When she was four months pregnant, Tammy informed her husband that she was expecting a child and that Brian was the father. However, Vuturo and Tammy agreed to continue their marriage and raise the child as their own. The child was born on March 19, 2001. Vuturo and Tammy consulted counsel to determine how they could keep Brian out of the child's life.

Tammy named Vuturo as the father on the child's birth certificate. For the first three years of the child's life, Vuturo raised her as his own child. Vuturo and Tammy represented to others that the child was their biological child. Vuturo was an attentive father and attended to the child's daily needs. Vuturo worked from the marital residence after the child's birth and spent time with her throughout the day. He was the child's sole financial support during the marriage.

In March 2004, while Vuturo was out of town on a business trip, Tammy left the marital residence with the child and moved in with Brian in Maryland.

Vuturo filed his bill of complaint seeking a divorce from Tammy on May 7, 2004. The court awarded Vuturo temporary visitation with the child on January 7, 2005. Tammy and Vuturo were divorced by final decree entered on March 31, 2005. The decree continued proceedings concerning the child. Tammy and Brian married on May 6, 2005. Thereafter, they changed the child's last name, sought to prevent Vuturo from having contact with the child, and attempted to

eliminate Vuturo from the child's life, telling the child Vuturo was "bad," and destroying photographs of him.

In his original pleading, Vuturo requested "custody" of the child. Tammy responded to the action and specifically requested the court to grant her "custody" and sought the equitable distribution of the marital estate. She also asked the court to award temporary and permanent spousal support and sought an attorney's fees award. Brian requested leave to intervene in the action and joined in the request for the trial court to deny Vuturo any visitation with the child.

The trial court heard evidence from five experts during the course of the hearings as well as testimony from the parties and other lay witnesses regarding the parties' relationships with the child and the effect that denying Vuturo visitation would have on the child. The trial court entered a final order on January 3, 2006, granting Vuturo visitation with the child.

## ANALYSIS

### I.

Code § 20-146.12 provides, in pertinent part, that

> Except as otherwise provided in § 20-146.15, a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
>
> 1. This Commonwealth is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth.

The O'Rourkes concede that Virginia was the child's home state within six months of the commencement of the proceedings. They argue, however, that Vuturo is not "a parent or person acting as a parent" under the applicable statutes and that the court therefore lacked jurisdiction to adjudicate the cause.

Code § 20-146.1 defines a "person acting as a parent" as follows:

> "Person acting as a parent" means a person, other than a parent, who has (i) physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding and (ii) been awarded legal custody by a court or claims a right to legal custody under the laws of this Commonwealth.

The O'Rourkes reason that because Vuturo only sought "custody" in his initial pleadings and did not specifically ask for "legal custody," he therefore cannot claim to be a "person acting as a parent" as defined above. We find no merit in this contention.

"[T]he Supreme Court has rejected limiting the definition of 'custody' to legal custody," "defined generally as '[t]he care and control of a thing or person.'" Krampen v. Commonwealth, 29 Va. App. 163, 167-68, 510 S.E.2d 276, 278 (1999) (quoting Black's Law Dictionary 384 (6th ed. 1990)); see Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972). Thus, by seeking "custody" of the child in his initial pleading, Vuturo necessarily sought, at a minimum, "legal custody" of the child.

Additionally, the requirements for pleading "are not so strict as to demand specificity beyond that necessary to 'clearly [inform] the opposite party of the true nature of the claim or defense' pled." Balzer & Assocs. v. Lakes on 360, 250 Va. 527, 531, 463 S.E.2d 453, 456 (1995) (quoting Rule 1:4(d)); see also Rule 2:2 (An equity complaint, properly pled, implicitly includes request for "general relief as the nature of the case may require and to equity may seem meet . . . ."). Thus, notice pleading principles require fair warning of the general form of relief sought. Vuturo's pleading provided the O'Rourkes with fair warning of the relief he sought.

Finally, we note that at the time Vuturo filed his initial pleading, he was legally presumed to be the natural father. The child was born during the marriage, and Vuturo was listed on the child's birth certificate as her natural father. "[W]hen a child is born in wedlock the law

- 4 -

presumes legitimacy and the presumption can be rebutted only by 'strong, distinct, satisfactory and conclusive' evidence." NPA v. WBA, 8 Va. App. 246, 249, 380 S.E.2d 178, 180 (1989) (quoting Scott v. Hillenberg, 85 Va. 245, 246-47, 7 S.E. 377, 378 (1888)). Only after the initiation of the suit was Vuturo's paternity of the child challenged.

By requesting "custody" in his initial pleading, Vuturo "claim[ed] a right to legal custody under the laws of this Commonwealth" and thus is a "person acting as a parent" under the definition contained in Code § 20-146.1. Therefore, the trial court possessed subject matter jurisdiction to rule on this case, under Code § 20-146.12.

## II.

## A.

> "[B]efore visitation can be ordered over the objection of the child's parents, a court must find an actual harm to the child's health or welfare without such visitation." A court reaches consideration of the "best interests" standard in determining visitation only after it finds harm if visitation is not ordered.

Williams v. Williams, 256 Va. 19, 22, 501 S.E.2d 417, 418 (1998) (quoting Williams v. Williams, 24 Va. App. 778, 784-85, 485 S.E.2d 651, 654 (1997)).

The O'Rourkes assert Vuturo failed to establish by clear and convincing evidence that there would be actual harm to the child if he was denied visitation.

> Code § 20-124.2(B) requires a showing of "clear and convincing evidence" before visitation may be awarded to a non-parent. This erects a "more stringent standard" than a mere "preponderance of the evidence." Congdon v. Congdon, 40 Va. App. 255, 263, 578 S.E.2d 833, 837 (2003). Clear and convincing evidence involves "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Id. (quoting Lanning v. Va. Dept. of Transp., 37 Va. App. 701, 707, 561 S.E.2d 33, 36 (2002) (citation omitted)).

Griffin v. Griffin, 41 Va. App. 77, 85, 581 S.E.2d 899, 903 (2003).

Psychologist Dr. Robert Marvin testified that denying Vuturo visitation would severely affect the child and cause her actual harm. Marvin provided the court with a detailed summation of the methods he used to reach his conclusions. He explained that early in their lives children develop "a very close bond" with parent figures and that they "tend to become attached only to a small number of people." Maintaining such bonds "is crucial in . . . helping the child develop neurological and physiological growth patterns." He opined that the child's relationships with her biological parents, teachers, and peers would be adversely affected and that she would suffer emotional scars if Vuturo was denied visitation with her. Marvin explained the child was strongly attached to Vuturo from her three years of believing him to be her father. Dr. Arnold Stohlberg emphasized Vuturo is well qualified for an "attachment relationship."

Dr. Marie Brown, an "independent evaluator" appointed by the court and chosen by both parties at the request of the guardian *ad litem*, also testified the child would suffer harm if Vuturo was denied visitation. Brown explained that she would suffer both short and long term detriments, including aggressive behavior and trouble forming attachments later in her life.

The O'Rourkes presented the testimony of Dr. Leigh Hagen, who criticized Dr. Marvin's methodology and conclusions. The trial court, in its opinion letter, specifically found Dr. Marvin's testimony credible and persuasive and was convinced of the "validity" of Dr. Marvin's approach.

The record establishes that the trial judge considered the testimony of the experts and thoroughly evaluated those experts' opinions. "We defer to the trial [judge]'s evaluation of the credibility of the witnesses." Shackelford v. Shackelford, 39 Va. App. 201, 208, 571 S.E.2d 917, 920 (2002). Furthermore, "[i]t is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion

to accept or reject any of the witness' testimony." Piatt v. Piatt, 27 Va. App. 426, 435, 499 S.E.2d 567, 571 (1998).

Dr. Marvin and Dr. Brown conducted testing designed to determine the nature and extent of the relationship between Vuturo and the child and whether the termination of that relationship would harm the child. Concluding that it would, both experts opined that denying Vuturo visitation with the child would cause her long-term harm. The trial court accepted their testimony, and nothing in the record suggests the court's credibility determination was wrong. The evidence supports the court's conclusion that the child would suffer actual harm if Vuturo was denied visitation with the child.

B.

The O'Rourkes also assert the trial court erred in determining that visitation with Vuturo would be in the child's best interests.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990); see also Code § 20-124.2(B). The trial court's determination must be based on all the evidence, the factors listed in Code § 20-124.3, and the best interests of the child "as viewed under the circumstances existing at the time of the decision." Cloutier v. Queen, 35 Va. App. 413, 425, 545 S.E.2d 574, 580 (2001). See also Code § 20-124.2(A). While the court must consider the factors in the statute, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).

"A trial court's determination of a child's best interests 'is reversible on appeal only for an abuse of that discretion, and a trial court's decision will not be set aside unless plainly wrong

- 7 -

or without evidence to support it.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). "We defer to the trial court's evaluation of the credibility of the witnesses who testify *ore tenus*." Shackelford, 39 Va. App. at 208, 571 S.E.2d at 920.

In this case, the evidence demonstrated that over the course of the three years the child lived with Vuturo believing him to be her father, she developed a close bond with him. Vuturo has had a positive impact on the child's life, and eliminating that relationship would cause the child actual harm. Initially, Brian took little interest in the child. During the mother's pregnancy, Brian requested Tammy terminate the pregnancy and offered her the funds to do so. Brian had limited contact with the child during her first three years. He saw her less than twenty-five times during that time period, and each visit lasted only an hour or two. Before intervening in this case, Brian neither sought to establish his paternity nor asked for custody or visitation of the child.

The court considered the relationship between the child and Vuturo as well as her relationship with her biological parents. The court noted "the fact that [the child] developed a parental attachment to Mr. Vuturo during" her early childhood years. Expert testimony established the importance of such attachments formed at a young age and demonstrated the child would be adversely affected if she was unable to maintain her relationship with Vuturo. Thus, the court's determination that "it would be in the best interest of the child to prevent actual harm" to her, was supported by the evidence. We find no abuse of discretion in the court's conclusion that it would be in the child's best interests to have visitation with Vuturo.

### III.

The O'Rourkes also contend the trial court erred by ordering an evaluation of whether the child would suffer actual harm if denied visitation with Vuturo and "by relying on unfounded

- 8 -

testimony on causation of an injury from witnesses who were not qualified under Virginia law to provide such testimony."

A.

Relying on John v. Im, 263 Va. 315, 559 S.E.2d 694 (2002), the O'Rourkes argue that because neither Dr. Marvin nor Dr. Brown is a medical doctor, they were not "qualified to give expert testimony regarding causation of an injury that allegedly would result if [the child] did not have visitation with" Vuturo.

In John, the Supreme Court of Virginia held that "[a]n opinion concerning the causation of a particular *physical* human injury is a component of a diagnosis, which is part of the practice of medicine." Id. at 321, 559 S.E.2d at 697 (emphasis added). The Court concluded that since the expert in that case "was not a medical doctor, he was not qualified to state an expert medical opinion regarding the cause of John's injury." Id. In this case, the injury about which Drs. Marvin and Brown testified was a psychological, rather than a physical, injury.

> The sole purpose of permitting expert testimony is to assist the trier of fact to understand the evidence presented or to determine a fact in issue. Generally, a witness is qualified to testify as an expert when the witness possesses sufficient knowledge, skill, or experience to make the witness competent to testify as an expert on the subject matter at issue.

Commonwealth v. Allen, 269 Va. 262, 274, 609 S.E.2d 4, 12 (2005) (citations omitted). "In essence, all that is necessary for a witness to qualify as an expert is that the witness have sufficient knowledge of the subject to give value to the witness's opinion." Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). Without question, Dr. Marvin's and Dr. Brown's education, employment experience, and professional knowledge and skill regarding the bond between a child and an attachment figure and the effect of breaking that bond would have on a child, qualified them to render an expert opinion in this case. "The admission of expert testimony is committed to the sound discretion of the trial judge, and we will [reject] a

- 9 -

trial court's decision only where that court has abused its discretion." Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). Likewise, "whether a witness is qualified to testify as an expert is 'largely within the sound discretion of the trial court.'" Perdieu v. Blackstone Family Practice Center, Inc., 264 Va. 408, 418, 568 S.E.2d 703, 709 (2002) (quoting Noll v. Rahal, 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979)). Here, we find no abuse of discretion in the court's determination that both Drs. Marvin and Brown were qualified to testify as experts on the matter at issue. The court properly admitted the disputed testimony.

B.

The O'Rourkes acknowledge that under Code § 20-124.2(D), the trial court had the authority to order an "independent mental health or psychological evaluation to assist the court in its determination of the best interests of the child." They argue, however, that the court erred by ordering an evaluation to assist in its determination of actual harm from the lack of visitation with a third party. They assert the trial court "did not have the authority under any statute or through its general equity power to order a broader evaluation to determine whether there would be actual harm to [the child] if Victor Vuturo was denied visitation with her."

After initially agreeing to the appointment of an independent evaluator and endorsing Brown for that position, counsel for the O'Rourkes filed a motion for reconsideration presenting the above argument to the trial court and relying on Cavuoto v. Buchanan County, 44 Va. App. 326, 605 S.E.2d 287 (2004), to support their position. The trial court, finding Cavuoto concerned only a medical evaluation under Code § 37.1-134.21(H), denied the motion.

The rationale of Cavuoto is inapplicable to the instant case. Cavuoto addressed "a trial court's order for involuntary medical care entered pursuant to Code § 37.1-134.21." Id. at 332, 605 S.E.2d at 290. We held that the trial court exceeded its authority under the applicable statute by ordering the medical evaluation because it determined only that the examination was in

Cavuoto's best interests, rather than following the statutory mandate to determine if Cavuoto was incapable of making an informed decision regarding specific treatment or was mentally incapable of communicating such a decision. Id. at 332-33, 605 S.E.2d at 290.

In contrast, this case involves an independent psychological evaluation, ordered by the trial court to assist in its determination of the potential psychological consequences of severing the long-term relationship of the child and Vuturo and whether actual harm would occur as a result. The ordered evaluation falls under the scope of Code § 20-124.2(D). The record does not support the O'Rourkes' contention that the trial court assigned the responsibility of determining whether a denial of visitation would actually harm the child to Dr. Brown. Rather, the trial court considered Dr. Brown's testimony in conjunction with all of the evidence in making its own actual harm and best interests determinations. We find no error in the court's ordering the evaluation under the authority of Code § 20-124.2(D).

IV.

The parties each request this Court to award attorney's fees and costs incurred on appeal.

Upon a review of this appeal, we find that the O'Rourkes' case presented numerous questions that were not supported by law or evidence. See Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994). Therefore, we award attorney's fees and costs to Vuturo and we remand this case to the trial court to determine an appropriate award of attorney's fees and costs incurred in this appeal, including any attorney's fees and costs incurred at the remand hearing, and any reasonable attorney's fees and costs of collection, if necessary.

Accordingly, for the reasons stated above, the decision of the trial court is affirmed.

Affirmed.