COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Alston, Chafin and Senior Judge Haley


FLORIDA VELAZQUEZ

                                      MEMORANDUM OPINION[*]

v.      Record No. 0800-16-2                       PER CURIAM
                                          NOVEMBER 1, 2016

PRINCE EDWARD COUNTY
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Donald Carl Blessing, Judge

(Rick A. Friedman, II; Kimberly L. Fitzgerald; Mary Ashby Brown;
Friedman Law Firm, P.C., on briefs), for appellant.

(Jody Holyst Fariss; H. Evans Thomas, V, Guardian *ad litem* for the
minor children, on brief), for appellee.


Florida Velazquez (mother) appeals the orders that terminated her parental rights to her four

minor children. Mother argues that the circuit court erred by (1) relying on the expert testimony of

Dr. Robin Foster because her testimony was not "credible to a reasonable degree of medical

certainty following her admission that her testimony in the juvenile court proceedings was

inaccurate;" and (2) terminating mother's parental rights to her four children on the basis that she

could not identify the alleged sexual abuser of one of her children despite the fact that she otherwise

complied with all of the requirements of the Prince Edward County Department of Social Services

(the Department). Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See

Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Mother has four children. On October 6, 2014, the Department received a complaint that mother's then eight-year-old daughter, G., was at Lynchburg General Hospital with active lesions in her genital area. After being tested, G. was diagnosed with acute genital herpes. The other three children were tested for sexually transmitted diseases, and one of mother's daughters, L., also tested positive for herpes. Mother and Leonel Hernandez-Beltran[1] were tested, and both tested positive for chronic genital herpes.

Initially, the children were placed, pursuant to a safety plan, with their godmother, but that placement was no longer viable after one month. On November 6, 2014, the Prince Edward County Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary removal order, and the children entered foster care.

On December 4, 2014, the JDR court adjudicated all four children as abused and neglected. It also approved an initial foster care service plan. The Department recommended that the parents participate in psychological evaluations, individual counseling, and parenting classes. The parents also had to demonstrate the skills that they learned. Furthermore, they had to be accurate and honest in their reporting.

The Department questioned mother and Hernandez-Beltran about the incident. They said that they were the only caregivers for the children during the suspected timeframe that G. contracted the virus. They stated that they were not aware that they had the herpes virus and did not know how G. could have contracted the virus.

---

[1] Hernandez-Beltran is the biological father to three of mother's children, but not G.

On September 29, 2015, the Department filed petitions to terminate mother's parental rights. On December 9, 2015, the JDR court entered orders to terminate mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2).[2] Mother appealed the decision to the circuit court.

On April 18, 2016, the parties appeared before the circuit court. At the hearing, Dr. Foster, an expert in pediatric emergency medicine and child abuse, testified. The Department had contacted Dr. Foster and asked her to provide a second opinion regarding possible sexual abuse of G. and L. When G. first arrived at the clinic where Dr. Foster worked, G. was so upset and under so much emotional stress that Dr. Foster's nurse practitioner did not interview or examine G. on that day. Later, G. and L. returned to the clinic for testing. Based on her review of the hospital records and independent laboratory testing, Dr. Foster diagnosed G. with an acute outbreak of herpes. Dr. Foster determined that L. did not have herpes, and L.'s prior tests showed false positives. Dr. Foster testified at trial that, using clinical markers, she was able to determine that G. contracted the herpes virus between August 6, 2014 and September 22, 2014. Mother and Hernandez-Beltran contracted the virus prior to the child being infected. In conclusion, Dr. Foster stated, with a reasonable degree of medical certainty, that G.'s "herpes outbreak was sexually transmitted in the absence of any other history to provide any other explanation. It is a very unusual thing for an eight year old child to present with." Dr. Foster based her opinion on the child's "age, extensive testing that was done to confirm it was an acute contracted type two herpes, her demeanor and the amount of emotional reaction that she offered to us without specific history being offered in terms of how it was contracted."

---

[2] The JDR court also terminated Hernandez-Beltran's parental rights to his children, and he appealed the decision to the circuit court.

The foster mother testified that the three oldest children initially displayed inappropriate sexual behavior. However, since the children have been in foster care, their behavior has improved.

Cheryl Gowin, the counselor for G. and L., diagnosed G. with possible sexual abuse and attachment disorder. Gowin diagnosed L. with possible sexual abuse, enuresis, and post-traumatic stress disorder. Both children refused to discuss their family life prior to entering foster care. If Gowin mentioned G.'s prior home life, G. became "emotionally catatonic."

On March 23, 2015, Megan Demaline, an employee with Crossroads Community Services Board, completed an evaluation of services for mother. Demaline testified that mother did not express any problems or stress, even though her children were in foster care and that one of her children had contracted herpes. Mother did not express any concern that another child was diagnosed with enuresis. Mother told Demaline that she did not need any therapy or counseling. Based on mother's self-report, Demaline did not recommend any services, although admittedly, they could have been needed.

Robert Reborn, of Family Community Support Systems, worked with mother and Hernandez-Beltran from January 2015 until April 2016. He supervised visitation and provided parent coaching services. Reborn stated that the parents were "great" at participating in the sessions and did their homework. However, they never expressed concern that G. was diagnosed with herpes and L. was diagnosed with enuresis. They never asked questions about the diagnoses.

During the hearing, mother testified and stated that she did not think G. was sexually abused, although she admitted that it was unusual for an eight-year-old child to contract herpes. Mother denied that it was her fault that the child had herpes, and to her knowledge, Hernandez-Beltran did not cause the child to get herpes. Mother admitted that she never called

the police or tried to start a criminal investigation to determine how the child could have received the disease.

At the conclusion of all of the evidence and argument, the circuit court ordered that mother's parental rights should be terminated pursuant to Code § 16.1-283(B) and (C).[3] The circuit court found that the parents were not credible. They did not accept services in a "meaningful basis" and never expressed concern about their children's health. The circuit court questioned why the parents never sought assistance or asked questions as to how G. could have contracted herpes. It also noted that the other children had "inappropriate behavior towards one another and towards other adults at times." The circuit court found that it was in the children's best interests to terminate mother's parental rights and entered orders reflecting its ruling on April 19, 2016. This appeal followed.

ANALYSIS

*Assignment of error #1*

Mother argues that the trial court erred by relying on Dr. Foster's testimony because Dr. Foster admitted that her testimony in the JDR court was inaccurate. At the JDR court hearing, Dr. Foster relied on the lab results from the hospital when she testified that L. had herpes. However, after the JDR court hearing, L. was tested at Dr. Foster's clinic, and it was determined that L. did not have herpes. Dr. Foster explained that the hospital's test indicated a false positive, but after the subsequent testing, she concluded that L. did not have herpes.

Mother contends Dr. Foster's testimony regarding the timeframe that G. contracted the virus also may be inaccurate. Dr. Foster relied on the hospital's tests to determine the timeframe. Since the hospital tests were inaccurate for L., mother questions the reliability of the records and whether Dr. Foster should have continued to rely on them.

---

[3] The circuit court also terminated Hernandez-Beltran's parental rights.

The circuit court had the opportunity to see and hear the witnesses. It specifically found Dr. Foster's testimony to be "extremely credible." "We defer to the trial [judge]'s evaluation of the credibility of the witnesses." O'Rourke v. Vuturo, 49 Va. App. 139, 150, 638 S.E.2d 124, 129 (2006) (quoting Shackelford v. Shackelford, 39 Va. App. 201, 208, 571 S.E.2d 917, 920 (2002)). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). "In determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion." Id.

Mother does not contest Dr. Foster's testimony that G. had an acute outbreak of genital herpes. The record established that mother and Hernandez-Beltran had herpes and contracted the virus prior to G. becoming infected. Dr. Foster provided detailed testimony about G.'s tests and how she interpreted the results. She explained how she arrived at her timeframe for when G. could have contracted the virus. Based on the record, the circuit court did not err in finding Dr. Foster's testimony to be credible.

*Assignment of error #2*

Mother argues that the circuit court erred in terminating her parental rights because she complied with all of the Department's requirements, except she could not identify the person who sexually abused G.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount

consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(B)[4] and (C)(2).[5] Mother argues that she participated in all of the required services. She went to the evaluation at the Community Services Board, and no services were recommended. She participated in the supervised visitations and parent coaching sessions. She did the homework. She testified that if the Department had asked her, she would have separated from Hernandez-Beltran in order to have the children returned to her.

However, the circuit court did not find mother's testimony to be credible. Although mother attended the various evaluations and meetings, the evidence supports the circuit court's finding that mother did not participate in a "meaningful" manner. The circuit court stated that

---

[4] Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

[5] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

mother made "no constructive steps" in resolving the underlying problem. She did not ask how G. contracted herpes or offer any explanation as to how it could have happened. In fact, she did not express any concern about the children's health. Mother did not ask Reborn about sexually transmitted diseases, even though they discussed the topic during a parent coaching session. In fact, Reborn testified that despite working with the parents for fifteen months, they allowed the children to have access to a cell phone with pornography on it at the last visitation session. The parents did not appear to be shocked or upset that these images were on the phone, and they did not protect the children from such images. Mother never demonstrated that she could provide a safe environment for the children or that she substantially remedied the situation that led to the children being placed in foster care.

The evidence supports the circuit court's finding that it was in the children's best interests for mother's parental rights to be terminated.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.